Adam Rose
Law Office Of Robert Starr
23901 Calabasas Rd., #2072
Calabasas, CA 91302
818-225-9040
Fax: 818-225-9042
Email: adam@starrlaw.com

Harold L. Lichten, pro hac vice
Matthew Thomson, pro hac vice
Lichten & Liss-Riordan, PC
729 Boylston Street
Suite 2000
Boston, MA 02116
617-994-5800
Email: hlichten@llrlaw.com;
mthomson@llrlaw.com;

*Attorney for Plaintiffs Christne McEvoy and Leng Sam,
individually and on behalf of all others
similarly situated*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTINE MCEVOY AND LENG SAM, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HENRY INDUSTRIES, INC.,<br>                Defendant. | CASE NO. 2:22-cv-01678<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: November 14, 2024<br>Hearing Time: 1:30 pm<br>Courtroom:   10, 13th Floor<br>Judge: Hon. Daniel J. Calabretta |

1

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – CASE NO. CV 2:22-CV-01678

**NOTICE OF MOTION AND MOTION**

**TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 14, 2024, at 1:30 p.m., in Courtroom 10 of this Court, located at the Robert T. Matsui United States Courthouse, 501 I Street, Sacramento, CA., Plaintiffs Christine McEvoy and Leng Sam, individually and on behalf of all others similarly situated, will, and hereby do, move the Court pursuant to Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b) for an order:

(1) Preliminarily approving the Settlement Agreement between Defendant Henry Industries and Plaintiffs (attached as Exhibit 1 to the Declaration of Matthew Thomson, filed concurrently herewith), on the grounds that its terms are sufficiently fair, reasonable, and adequate for notice to be issued to the settlement class;

(2) Certifying the proposed settlement class for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23(c);

(3) Approving the form and content of the proposed class notice (Exhibit A to the Settlement Agreement);

(4) Appointing Counsel Harold Lichten and Matthew W. Thomson of Lichten & Liss-Riordan, P.C., Adam Rose or Law Office of Robert Starr, and Jeff Vollmer of Goodwin & Goodwin, LLP, to represent the settlement class as class counsel;

(5) Appointing Phoenix Group as Settlement Administrator;

(6) Scheduling a hearing regarding final approval of the proposed settlement, Class Counsel's request for attorneys' fees and costs, and enhancement payments to the Named Plaintiffs; and

(7) Granting such other and further relief as may be appropriate.

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities below; the Declaration of Matthew Thomson filed concurrently herewith; all supporting

i

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – CASE NO. 2:22-cv-01678

1
2
3  exhibits filed herewith; all other pleadings and papers filed in this action; and any argument or
4  evidence that may be presented at or prior to the hearing in this matter.
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I. INTRODUCTION

Pursuant to Federal Rule of Procedure Rule 23, Plaintiffs Christine McEvoy and Leng Sam ("Plaintiffs") move this Court for an order preliminarily approving a proposed class action settlement agreement entered into by Plaintiffs and Defendant Henry Industries ("Defendant" or "Henry Industries"). The Settlement arises from highly contested litigation and was achieved after a full day of mediation and continued settlement discussions among the Parties. The Settlement Agreement is attached as Exhibit 1 to the Declaration of Matthew Thomson (filed herewith) ("Thomson Decl.").

The proposed settlement would pay a non-reversionary fund of $300,000 to approximately 80 class members. A primary consideration in resolving this matter is the financial condition of Defendant and Plaintiff's counsel's concerns that the Defendant would be unable to sustain a higher judgment or settlement amount. Plaintiff's counsel was provided with confidential financial documents as part of the mediation process that informed their opinion that given the financial realities, this settlement is a very favorable result and avoids substantial risks associated with continued litigation.

The settlement satisfies the standard for preliminary approval—it is undoubtedly within the range of possible approval to justify sending notice to settlement class members and scheduling final approval proceedings; moreover, Plaintiffs submit that the proposed settlement is likely to earn final approval. See Fed. R. Civ. P. 23 (e); In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Thus, the Court should: (1) grant preliminary approval of the settlement; (2) certify, for settlement purposes only, a settlement class of all persons who executed an agreement with Defendant Henry Industries and provided courier or delivery services on behalf of Defendant in California during the "Settlement Period" (defined as August 19, 2018, through June 17, 2022); (3) approve the manner and forms of notice; (4) appoint Matthew W. Thomson of Lichten & Liss-Riordan, P.C., Adam Rose or Law Office of Robert Starr, and Jeff Vollmer of Goodwin & Goodwin, LLP to represent the settlement class as class counsel; (5) appoint Phoenix Group as Settlement Administrator; and (6) schedule a hearing for final approval approximately 120 days after the Court's preliminary approval order.

## II. BACKGROUND

### A. Litigation History

On August 19, 2022, Plaintiff Ernest Sarte filed a Complaint against Defendants in the Superior Court of the State of California, County of San Joaquin. Mr. Sarte alleged that Defendant committed various violations of the California wage laws. Mr. Sarte and others worked as delivery drivers for Defendant in California, and alleged that although they were designated as non-employee "independent contractors," they were actually employees entitled to the protections of the California wage laws. See Dkt. 1 (State Court Complaint attached to Defendant's Notice of Removal). On September 22, 2022, Defendant filed its Answer to the Complaint, asserting a general denial and 42 affirmative defenses. Concurrently, Defendant removed the case to federal court in the Eastern District of California. On January 5, 2023, Plaintiff Sarte filed a First Amended Complaint. On February 8, 2023, Plaintiff filed a motion for conditional certification under the FLSA. After exchanging initial disclosures, the Parties agreed to attempt an early resolution of this matter and on August 24, 2023, the parties participated in mediation with ADR Neutral Monique Ngo-Bonnici via videoconference. In large part, due to Henry Industries limited financial ability to fund a settlement, the case did not resolve. Nonetheless, following the unsuccessful mediation, the parties continued direct negotiations; and eventually agreed to a dismissal of the FLSA claims that had been asserted on behalf of a national collective without prejudice, and agreed to resolve the California state law claims on behalf of a proposed class of California drivers. Unfortunately, Mr. Sarte passed away while the settlement was being negotiated. Plaintiffs have filed a Second Amended Complaint adding two additional named Plaintiffs and proposed class representatives.

### B. The Proposed Settlement

The Settlement provides for a non-reversionary Settlement Fund in the amount of $300,000.00. See Ex. 1 (Settlement Agreement) at § I(R). This Settlement Fund will be distributed as follows:

Class Fund:                $194,325

PAGA Payment:              $10,000

2

    Attorney's Fees and Costs:    $85,675 ($75,000 + $10,675)

    Settlement Administration:    $5,000

    Service Payments:    $5,000

The $194,325 Net Settlement Fund will be distributed to class members pursuant to a plan of allocation summarized in the Settlement Agreement, which is based on the number of pay periods worked by a given class member during the Settlement Period. Id. at § I(S)..

    The Net Settlement Fund of $194,325 will be split into a designated Rule 23 settlement fund related to the release of state law claims, and an FLSA release fund. Ninety-percent of the fund ($174,892.50) constitutes the Rule 23 release fund, and $19,432.50 constitutes the FLSA fund. All class members who do not opt-out or exclude themselves from the settlement class will receive a check for their Rule 23 release, which will be mailed to their last known address.[1] All class members who submit a timely Opt-in Claim Form will also receive an FLSA Consideration Check for their release of FLSA claims. The Rule 23 class payment will be calculated based on the class member's pay periods worked during the class period relative to the total number of pay periods worked by the Rule 23 class. Id. at § III(D)(1). The FLSA Consideration Check will be calculated based on the individual's pay periods worked during the applicable statutory period relative to the total number of pay periods of all individuals who submit an Opt-in Claim Form. Id. at § III(D)(2).

    The parties have selected Phoenix Group to administer the settlement. Id. at § I(LL).. The settlement provides that notice will be distributed to settlement class members via regular mail, providing class members with complete information regarding the settlement. Id. at § III(F)(2)(b).

    The Settlement Administrator will send reminder notice any class members who have not cashed their checks after 120 days to confirm their receipt of the check and remind them to cash or deposit the check prior to its expiration. Id. at § III(F)(10). After 180 days, the funds from any uncashed checks will be sent to the Controller of the State of California to be held pursuant to the Unclaimed Property

---

[1] This check will also include the class members' PAGA payment, if applicable. If a class member excludes himself or herself from the settlement and declines to submit an Opt-in Claim Form, he or she will still receive a PAGA payment if he or she worked during the applicable PAGA period.

Law, California Code of Civil Procedure, § 1500 et seq. in the names of the Settlement Class Members. Id. This settlement is non-reversionary, meaning that no funds from the settlement, including unclaimed funds, will revert to Henry Industries.

All settlement class members who do not exclude themselves will release all wage-and-hour claims and related claims that could have been brought in this Action against Henry Industries under Federal Rule 23, as described in the Settlement Agreement (except for claims under the FLSA). Id. at § III(G)(1). Those class members who submit an Opt-in Claim Form will also be deemed to release claims under the Federal Fair Labor Standards Act ("FLSA"). Id. at § III(G)(2).All class members who worked during the PAGA period will release PAGA claims, and the Notice informs them of this information. Id. at § III(G)(3).

## III.   THE LEGAL STANDARD

Federal Rule of Civil Procedure 23 (e) provides that any compromise of a class action must receive Court approval. "Approval under 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004) citing Manual for Complex Litig., Third, § 30.41 (1995). Pursuant to Rule 23, preliminary approval of proposed class action settlement is appropriate where the parties make a "showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23 (e)(1).

As set forth infra, Part IV.A., the settlement class will likely be certified. Moreover, as set forth further infra, Part IV.B, all of the requirements of Rule 23(e)(2) have been met as well. Specifically, the class representatives and class counsel have adequately represented the class, the proposed settlement was negotiated at arm's length, the relief is more than adequate given the costs, risks, and delay of further litigation and the contours of the proposed settlement, and the proposal treats all members of the Settlement Class equitably relative to one another. Fed. R. Civ. P. 23(e)(2); see also In re Tableware

Antitrust Litig., 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (a court should grant preliminary approval if the parties' settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."); Deaver v. Compass Bank, 2015 WL 4999953, *4 (N.D. Cal. Aug. 21, 2015).  "Moreover, "a presumption of fairness arises where: (1) counsel is experienced in similar litigation; (2) settlement was reached through arm's length negotiations; (3) investigation and discovery are sufficient to allow counsel and the court to act intelligently." In re Heritage Bond Litig., 2005 WL 1594403, *2 (C.D. Cal. June 10, 2005).

"In deciding whether to approve a proposed settlement, the Ninth Circuit has a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" Id. at *2 (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992)). "Generally, the district court's review of a class action settlement is 'extremely limited.'" Harris, 2011 WL 1627973, *7 (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir.1998)). "The Court considers the settlement as a whole, rather than its components, and lacks the authority to delete, modify or substitute certain provision." Id. (internal citation omitted).

**IV.   DISCUSSION**

    **A.   Certification of the Settlement Class is Appropriate**

The Court must confirm the propriety of the settlement class by determining "if it meets the four prerequisites identified in Federal Rule of Civil Procedure 23(a) and additionally fits within one of the three subdivisions of Federal Rule of Civil Procedure 23 (b)." Alberto v. GMRI, Inc., 252 F.R.D. 652, 659 (E.D. Cal. 2008). All of the criteria are satisfied in this case.  Thus, Plaintiffs now ask that the Court certify, for settlement purposes, a class consisting of:

> All persons who executed an agreement with Defendant Henry Industries and provided courier or delivery services on behalf of Defendant in California during the Settlement Period (defined as August 19, 2018, through June 17, 2022, (the "Settlement Period")
> See Ex. 1 (Settlement Agreement) at § I(C).

### 1. Requirements of Fed. R. Civ. P. 23(a)

Rule 23(a) requires that the Plaintiffs demonstrate: "(1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." Barbosa v. Cargill Meat Sols. Corp., 297 F.R.D. 431, 441 (E.D. Cal. 2013).

#### a. Numerosity

A plaintiff will satisfy the numerosity requirement if "the class is so large that joinder of all members is impracticable." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir.1998). "Although the requirement is not tied to any fixed numerical threshold, courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members." Villalpando v. Exel Direct, Inc., 303 F.R.D. 588, 605-06 (N.D. Ca. 2014). Here, the settlement class consists of approximately 80 drivers. See Ex. 1 (Settlement Agreement) at § II(E). Thus, the numerosity requirement is satisfied.

#### b. Commonality

Courts have found that "[t]he existence of shared legal issues with divergent factual predicates is sufficient, [to satisfy commonality under Rule 23] as is a common core of salient facts coupled with disparate legal remedies within the class." Smith v. Cardinal Logistics Mgmt. Corp., 2008 WL 4156364, *5 (N.D. Cal. Sept. 5, 2008). The "commonality requirement has been 'construed permissively,' and its requirements deemed minimal." Estrella v. Freedom Fin'l Network, 2010 U.S. Dist. LEXIS 61236 (N.D. Cal. 2010) (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019-1020 (9th Cir. 1998)). Here, all settlement class members share the key question of whether they have been improperly classified as independent contractors and also share common questions of law with respect to their substantive claims. Similar claims have been held to present common issues in other cases. See Roman v. Jan-Pro Franchising Int'l, Inc., 342 F.R.D. 274, 296 (N.D. Cal. 2022) ("It would be inefficient to try the misclassification issue on an individual basis for the numerous putative class members here when common questions predominate").

#### c. Typicality

"Typicality is a permissive standard, and only requires that the named plaintiffs' claims are 'reasonably coextensive' with those of the class." Dalton v. Lee Publications, Inc., 270 F.R.D. 555, 560 (S.D. Cal. 2010). Thus, "[i]n examining this condition, courts consider whether the injury allegedly suffered by the named plaintiffs and the rest of the class resulted from the same alleged common practice." Id. (internal quotation omitted). Here, there are no factual differences between Plaintiffs' claims and those of the settlement class members; all drivers allegedly have suffered the same misclassification and resulting wage and hour violations. See Roman v. Jan-Pro Franchising Int'l, Inc., 342 F.R.D. at 290 (finding typicality where named plaintiff and other workers all challenged "defendant's conduct of classifying plaintiffs and the putative class members as independent contractors.").

### d.     Adequacy

"Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon, 150 F.3d at 1020. Here, class counsel will adequately represent the certified class and that named plaintiffs will adequately represent the interests of the class in certifying them as lead plaintiffs for the certified class. There is no conflict of interest between the class representatives and the class members. Although the proposed settlement agreement requests $2,500 each for the named Plaintiffs as incentive awards, these modest amounts are reasonable and do not create a conflict of interest. See Botonis v. Bimbo Bakeries USA, Inc., 2024 WL 100545, at *5 (E.D. Cal. Jan. 9, 2024) (finding that similar incentive payments to named plaintiffs did not create conflict of interest or affect adequacy). Moreover, class counsel has expended significant efforts in informal discovery, mediation efforts, showing that they have vigorously prosecuted this action.

### 2.     Requirements of Fed. R. Civ. P. 23(b)

Rule 23(b)(3) requires the Court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ.

P. 23(b)(3). Some of the factors that are part of the Rule 23(b)(3) analysis are rendered irrelevant in the settlement context, such as "the likely difficulties in managing a class action." Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 488 (E.D. Cal. 2010) (noting that this factor is "essentially irrelevant" in "the context of settlement"); see also Alberto v. GMRI, Inc., 252 F.R.D. 652, 664 (E.D. Cal. 2008); Spann v. J.C. Penney Corp., 2016 WL 297399, *3 (C.D. Cal. Jan. 25, 2016) ("[C]ourts need not consider the Rule 23(b)(3) considerations regarding manageability of the class action, as settlement obviates the need for a manageable trial.").

Here, common questions predominate regarding the drivers' employment status and the underlying substantive violations of the Labor Code. These misclassification claims predominate, and a class action to resolve them is superior than individual actions.  See generally Botonis v. Bimbo Bakeries USA, Inc., 2024 WL 100545, at *6 (E.D. Cal. Jan. 9, 2024) ("The predominance requirement is generally satisfied when a class action challenges a uniform procedure or policy by the defendant."). Further, it has been well-recognized that "[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." Noll v. eBay, Inc., 309 F.R.D. 593, 604 (N.D. Cal. 2015).

**B.     The Court Should Preliminarily Approve the Settlement**

Under Fed. R. Civ. P. 23(e)(2), the Court must consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

See Fed. R. Civ. P. 23(e)(2). "In the notes accompanying these amendments, the Advisory Committee acknowledged that '[c]ourts have generated lists of factors' to determine the fairness, reasonableness, and adequacy of a settlement" such that "adding these specific factors to Rule 23(e)(2) was not designed 'to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" Hefler v. Wells Fargo & Co., 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018).

Courts in the Ninth Circuit have typically found preliminary approval of a settlement and notice to the class is appropriate if it: (1) falls within the range of possible approval; (2) is the product of serious, informed, non-collusive negotiations, (3) has no obvious deficiencies; and (4) does not improperly grant preferential treatment to class representatives or segments of the class. Deaver v. Compass Bank, 2015 WL 4999953, *4 (N.D. Cal. Aug. 21, 2015). Here, both under the factors enumerated in Rule 23(e)(2) and the factors traditionally considered by the Ninth Circuit, the proposed settlement clearly warrants preliminary approval.

### 1. The Settlement is the Product of Informed, Non-Collusive Negotiation

Under Fed. R. Civ. P. 23(e)(2)(A)-(B), "[t]he Court must consider whether 'the class representatives and class counsel have adequately represented the class' and whether 'the proposal was negotiated at arm's length', [which] [] the Advisory Committee notes suggest, [] are 'matters that might be described as procedural concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement.'" Hefler, 2018 WL 6619983, at *6. Courts in this Circuit have likewise found that for the parties "to have brokered a fair settlement, they must have been armed with sufficient information about the case to have been able to reasonably assess its strengths and value." Acosta v. Trans Union, LLC, 243 F.R.D. 377, 396 (C.D. Cal. 2007). Thus, adequate discovery and the use of an experienced mediator support a finding that settlement negotiations were both informed and non-collusive. See Villegas v. J.P. Morgan Chase & Co., 2012 WL 5878390, *6 (N.D. Cal. Nov. 21, 2012); Deaver, 2015 WL 4999953, *7; Satchell v. Fed. Express Corp., 2007 WL 1114010, *4 (N.D. Cal.

Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive").

Here, "[b]y the time the settlement was reached, the litigation had proceeded to a point in which both plaintiffs and defendants had a clear view of the strengths and weaknesses of their cases." Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 489 (E.D. Cal. 2010) (internal citations omitted). Defendants provided data regarding the amount of work performed by the putative class. See Thomson Decl. at ¶ 5. The parties met on August 24, 2023, with professional mediator Monique Ngo-Bonnici and continued these discussions well beyond that mediation session. Id. at ¶ 4. In these negotiations, Class counsel was informed by her prior experience in similar cases. The settlement the parties have reached was the result of thorough and passionate negotiations by experienced counsel familiar with the applicable law, class action litigation, and the facts of this case. See Nielson v. The Sports Authority, 2013 WL 3957764, *4–5 (N.D. Cal. July 29, 2013) ("[T]he settlement resulted from non-collusive negotiations, i.e., a mediation before … a respected employment attorney and mediator."); Barcia v. Contain-A-Way, Inc., 2009 WL 587844, *1 (S.D. Cal. Mar. 6, 2009) (granting final settlement approval and finding that Mark Rudy is a "nationally recognized labor mediator"); Zolkos v. Scriptfleet, Inc., 2014 WL 7011819, *2 (N.D. Ill. Dec. 12, 2014) ("Two experienced class action employment mediators, . . . assisted the Parties with the settlement negotiations and presided over two full-day mediations. This reinforces the non-collusive nature of the settlement."). Thus, the parties had ample information, expert guidance from an experienced mediator, and intimate familiarity with the strengths and weaknesses of the case.

**2.    The Relief Provided for the Settlement Class Is Fair and Adequate**

"Rule 23(e)(2)(C) and (D) set forth factors for conducting a 'substantive' review of the terms of the proposed settlement." Hefler, 2018 WL 6619983, at *7 (citing Fed. R. Civ. P. 23(e)(2)(C)-(D) advisory committee's note to 2018 amendment). "In determining whether 'the relief provided for the class is adequate,' the Court must consider '(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including

timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).'" Id. (citing Rule 23(e)(2)). Similarly, courts in the Ninth Circuit have evaluated "the range of possible approval criterion, which focuses on substantive fairness and adequacy, [] primarily [by] consider[ing] plaintiff's expected recovery balanced against the value of the settlement offer." Deaver v. Compass Bank, 2015 WL 4999953, *9 (N.D. Cal. Aug. 21, 2015).

### a.  Risks of Further Litigation

A "relevant factor" that courts must consider in contemplating a potential settlement is "the risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement." Vasquez, 266 F.R.D. at 489. Here, the significant risk arising from further litigation was Plaintiff's concerns that Henry Industries would be unable to sustain a larger judgment or settlement given the financial condition of the company. This was the driving factor in the settlement of this case. Even in the absence of financial concerns, Plaintiffs still faced substantial expense, delay, and risk if litigation had continued.

### b.  Benefit to Drivers

The proposed settlement allots a gross amount of approximately $155 per pay period for each driver. After attorney's fees, service payments, and costs of settlement administration, class members will receive approximately $90 for their Rule 23 release for each pay period that they worked. Assuming full participation in the FLSA portion of the settlement, all collective members will receive $10 per pay period for their release of FLSA claims. The average total payout to class members (assuming all submit an Opt-in Claim Form) is more than $2,400. Given the financial concerns regarding Henry Industries' ability to sustain a larger judgment or settlement, there can be no doubt that this is an excellent result for the class.

"In considering whether the relief provided to class members is adequate, courts compare the relief under the proposed settlement to the best possible outcome for the class." Botonis v. Bimbo Bakeries USA, Inc., No. 2:22-CV-01453-DJC-DB, 2024 WL 100545, at *8 (E.D. Cal. Jan. 9, 2024).

Based on the data provided prior to mediation, Plaintiff's counsel estimated approximately $1,400,000 in unreimbursed employee expense damages under Section 2802,[2] and $332,000 in minimum wage damages for the class under the FLSA. Those were the primary claims asserted in this case. The non-PAGA gross settlement amount ($290,000) represents approximately 16.7% of the total estimated damages ($1,732,000) on these claims. This is within the range of a fair and reasonable class action settlement, particularly where the driving factor in these settlement discussions was Defendants' ability to pay a larger settlement of judgment, which was informed by confidential financial documents that were provided by Defendants as part of the mediation process. See, e.g., Martinez v. Knight Transportation, Inc., 2023 WL 2655541, at *10 (E.D. Cal. Mar. 27, 2023) (approving a settlement for 18% of the total exposure on non-PAGA claims to be reasonable in light of the Defendant's legal and factual defenses); Byrne v. Santa Barbara Hosp. Servs., Inc., 2018 WL 10483678, at *12 n.6 (C.D. Cal. Dec. 14, 2018) (approving wage and hour settlement in which the gross settlement amount actually paid "represents about 0.73-1.25% of Plaintiffs' maximum total recovery").

As for the PAGA claims, the agreement sets aside $10,000 for settlement of the PAGA claims. Here, the PAGA claims cover a shorter, one-year period, during which time Henry Industries had started to wind down its California operations.[3] Thus, there are only 104 pay periods covered by the PAGA claims at issue. Plaintiffs estimated the total exposure on Defendants' PAGA claims to be $74,800. See Thomson Decl. at ¶ 7. Though the $10,000 recovery is only a portion of the total PAGA exposure, the overall settlement provides significant benefit to workers, and this amount is fair and reasonable. See Botonis v. Bimbo Bakeries USA, Inc., 2024 WL 100545, at *10 (E.D. Cal. Jan. 9, 2024) (granting preliminary approval despite that $10,000 PAGA portion of settlement represented "less than 1%" of the total PAGA exposure).

---

[2] The expense reimbursement damages used the IRS mileage reimbursement rate applicable in a given year.

[3] As of 2022, the company no longer does any business in California.

### 3.     The Settlement Has No Obvious Deficiencies

A court should also consider possible deficiencies in a settlement including an overly broad release of claims, an insufficient timeframe for notice, an inadequate form of payment, an unrelated *cy pres* designee, or an unreasonable request for attorneys' fees, among other things.  See Custom LED, LLC v. eBay, Inc, 2013 WL 6114379, *7-8 (N.D. Cal. Nov. 20, 2013); Deaver, 2015 WL 4999953, *7. Here, settlement class members will release only claims that were asserted or could have been asserted in this wage-and-hour proceeding, such as Labor Code claims that could arise from their alleged misclassification as independent contractors.  See Agreement at § III(G)(1).  The timeframe for notice is adequate, and settlement class members will be given ample opportunity to exclude themselves from the settlement and, if they do not exclude themselves, to cash their settlement check.  Likewise, the distribution will compensate drivers fairly, as discussed above.  No unclaimed funds will revert to Henry Industries.

Further, the attorneys' fee provision is fair and does not give rise to any deficiency.  Plaintiffs' counsel intends to apply for fees not to exceed 25% of the gross settlement fund (totaling $75,000).  The settlement is not contingent upon the Court approving counsel's application and if the Court ultimately awards less in attorney's fees.  "The typical range of acceptable attorneys' fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement value, with 25 percent considered a benchmark percentage."  Barbosa v. Cargill Meat Sols. Corp., 297 F.R.D. 431, 448 (E.D. Cal. 2013). However, "in most common fund cases, the award exceeds that benchmark percentage." Id.; In re Activision Sec. Litig., 723 F. Supp. 1373, 1377 (N.D.Cal.1989) ("nearly all common fund awards range around 30%"). Thus, here, a 25% fee is eminently reasonable.[4]

---

[4]     Moreover, this percentage fee recovery is a lower percentage than many fee awards in other California federal district courts.  See, e.g., Hernandez v. Dutton Ranch Corp., No. 19-CV-00817-EMC, 2021 WL 5053476, at *6 (N.D. Cal. Sept. 10, 2021) ("District courts within this circuit, including this Court, routinely award attorneys' fees that are one-third of the total settlement fund."); Benitez v. W. Milling, LLC, No. 1:18-CV-01484-SKO, 2020 WL 3412725, at *9 (E.D. Cal. June 22, 2020) (approving one-third fee award) (collecting cases); Vasquez, 266 F.R.D. at 492 (E.D. Cal. 2010) (collecting recent wage and hour cases in which counsel received fee awards in the range of 30% to 33.3% of the common fund); Lusby v. GameStop Inc., 2015 WL 1501095, *9 (N.D. Cal. Mar. 31, 2015) (finding a one-third fee award appropriate because to the results achieved, the risk of litigation, the skill required and the
*(Cont'd on next page)*

### 4. The Settlement Does Not Unfairly Grant Preferential Treatment to Any Settlement Class Members

"Consistent with Rule 23's instruction to consider whether 'the proposal treats class members equitably relative to each other,' Fed. R. Civ. P. 23(e)(2)(C)(i), the Court considers whether the Settlement 'improperly grant[s] preferential treatment to class representatives or segments of the class.'" Hefler, 2018 WL 6619983, at *8 (citing In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). "[T]o the extent feasible, the plan should provide class members who suffered greater harm and who have stronger claims a larger share of the distributable settlement amount." Hendricks v. StarKist Co., 2015 WL 4498083, *7 (N.D. Cal. July 23, 2015) (citing cases). However, "courts recognize that an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." Id. citing Vinh Nguyen v. Radient Pharm. Corp., 2014 WL 1802293, *5 (C.D. Cal. May 6, 2014). Here, the settlement will result in payment of a fair and reasonable award to settlement class members, particularly in light of the litigation risks. Settlement class members will receive settlement shares based on the number of pay periods that they worked during the settlement period, which Plaintiffs believe is the best proxy for the amount of relative damages among class members.

Likewise, the proposed enhancements for the named plaintiffs in this settlement are eminently reasonable. Plaintiffs will request enhancements of $2,500 for each of the two named plaintiffs. The requested amounts are significantly less than many awards in other cases in the federal district courts in California. See, e.g., Covillo v. Specialtys Cafe, 2014 WL 954516, *8 (N.D. Cal. Mar. 6, 2014) (awarding $8,000 to class representatives from $2,000,000 fund); Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 300 (N.D. Cal. 1995) (awarding $50,000 to named plaintiff out of $76 million

---

*(Cont'd from previous page)*

quality of work, and the contingent nature of the fee and the financial burden carried by the plaintiffs); Barnes v. The Equinox Grp., Inc., 2013 WL 3988804, *4 (N.D. Cal. Aug. 2, 2013) (awarding one-third of gross settlement in fees and costs because counsel assumed substantial risk and litigated on a contingency fee-basis).

settlement fund); Chu v. Wells Fargo Investments, LLC, 2011 WL 672645, *2 (N.D. Cal. Feb. 16, 2011) (awarding $10,000 incentive awards to two named plaintiffs).

Particularly given that the named plaintiffs have placed their names in the public eye as part of this high-profile litigation, these modest incentive payments are more than reasonable. See Van Vranken, 901 F. Supp. at 299 (noting that in evaluating incentive awards, courts may consider "the notoriety and personal difficulties encountered by the class representative" and "the amount of time and effort spent by the class representative" among other factors); see also Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 267 (N.D. Cal. 2015) ("Incentive awards are particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant "reputational risk" by bringing suit against their former employers").

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Preliminary Approval should be granted. Plaintiffs request that the Court enter an Order in the form attached hereto as Exhibit 1 granting preliminary approval of the class action settlement in this matter.

Date: September 3, 2024

                                                Respectfully submitted,

                                                _/s/ _Matthew Thomson_____
                                                Matthew Thomson, Esq.
                                                Lichten & Liss-Riordan, PC

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served by electronic filing on September 3, 2024 on all counsel of record.

                                             _/s/ Matthew Thomson_
                                             Matthew Thomson, Esq.