UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE MCEVOY AND LENG SAM, individually and on behalf of all others similarly situated, | No. 2:22-cv-01678-DJC |
| Plaintiff, | |
| v. | ORDER |
| HENRY INDUSTRIES, INC., | |
| Defendants. | |

Presently pending before the Court is Plaintiffs' unopposed Motion for preliminary approval of their Class, FLSA Collective, and PAGA Settlement. The Court initially denied the Motion due to information that was missing. However, upon reviewing the supplemental information filed by the Plaintiffs, the Court now GRANTS Plaintiffs' Motion contingent upon updating the Proposed Notice as directed by the Court within seven days of this Order.

////

////

////

1

**BACKGROUND**

2

**I.    Factual and Procedural Background**

3

Plaintiffs Christine McEvoy and Leng Sam seek approval of their $300,000

4

Federal Rule of Civil Procedure Rule 23 ("Rule 23") Class, Fair Labor Standards Act

5

("FLSA") Collective, and Private Attorney General Act ("PAGA") settlement on behalf of

6

themselves and approximately 80 drivers who were employed by Defendant Henry

7

Industries to provide courier or delivery services in California between August 19,

8

2018, and June 17, 2022.  (Mot. (ECF No. 57) at 1; Second Am. Compl. ("SAC") (ECF

9

No. 49) ¶¶ 1,4.)  Plaintiffs allege that Defendant committed various violations of

10

California and Federal law, including (1) minimum wage violations under Cal. Lab.

11

Code §§ 1197, 1194 and Wage Order No. 9, (2) overtime violations under Cal. Lab.

12

Code §§ 1194, 1198, 510 and 554 and Wage Order No. 9, (3) failure to pay minimum

13

wages under 29 U.S.C. § 201 *et seq.*, (4) failure to pay overtime under 29 U.S.C.

14

§§ 206(a)(1)(C) and § 207(a), (5) wage statement violations under Cal. Lab. Code

15

§ 226(a), (6) unlawful business acts of practices under Cal. Bus. & Prof. Code § 17200

16

*et seq.*, (7) misclassification as an independent contractor under Cal. Lab. Code

17

§ 2802, and (8) PAGA penalties.  (SAC ¶ 1.)  Plaintiffs' claims are based on Defendant's

18

classification of the drivers as non-employee independent contractors when they

19

were, in fact, employees entitled to the protections of California and Federal law.

20

(Mot. at 2.)

21

The Parties exchanged initial disclosures and participated in a mediation with

22

ADR Neutral Monique Ngo-Bonnici.  (*Id.*)  The mediation was initially unsuccessful, but

23

the Parties continued negotiations afterward and eventually agreed to settle their

24

claims.  (*Id.*)  The Parties agreed to dismiss the FLSA claims asserted on behalf of a

25

national collective without prejudice, and to resolve the California state law claims on

26

behalf of the proposed class of California drivers.  (Mot. at 2.)  Plaintiffs now move for

27

preliminary approval of their Settlement.

28

1    Plaintiffs move the Court to preliminarily approve (1) the Settlement

2    Agreement between Defendant and Plaintiffs; (2) certification of the proposed

3    Settlement Class for settlement purposes only; (3) approval of the form and content of

4    the proposed class Notice; (4) appointment of Harold Lichten and Matthew W.

5    Thomson of Lichten & Liss-Riordan, P.C., Adam Rose of Law Office of Robert Starr, and

6    Jeff Vollmer of Goodwin & Goodwin, LLP as Class Counsel; (5) appointment of the

7    Phoenix Group as the Settlement Administrator; and (6) scheduling final approval of

8    the Settlement.  The Plaintiffs also seek to designate Christine McEvoy and Leng Sam

9    as named Representatives of the Class.

10    The Court initially denied Plaintiffs' Motion and requested supplemental

11    information to adequately assess the proposed settlement.  The Plaintiffs have since

12    filed briefing addressing the Court's concerns.  (Supp. Brief (ECF No. 62).)  The Court

13    now considers all the relevant information in determining whether preliminary

14    approval is appropriate.

15    **II.    Proposed Settlement Terms**

16    The proposed class comprises all persons who executed an agreement with

17    Defendant and provided courier or delivery services on behalf of Defendant in

18    California between August 18, 2019, through June 17, 2022 ("Class").  (Settlement

19    (ECF No. 58-1) § I.C.)  The Parties also propose a PAGA subclass consisting of all

20    persons who provided courier or delivery services on behalf of Defendant in California

21    from April 11, 2021, through June 17, 2022 ("PAGA Class").  (*Id.* § I.AA.)  The

22    Settlement does not explicitly define the FLSA collective.  However, in the

23    supplemental briefing, the Plaintiffs explain that they seek to certify a Collective that

24    corresponds to the Rule 23 class definition.  (Supp. Brief at 4.)  Specifically, the FLSA

25    Notice will only be distributed to those "persons who executed an agreement with

26    Defendant Henry Industries and provided courier or delivery services on behalf of

27    Defendant in California during the Settlement Period. . . ."  (*Id.*)

28

The Parties have agreed to settle their claims for $300,000 total, with no part of the Settlement reverting to Defendants.  (Mot. at 2.)  The Settlement proposes several deductions from the total before it is distributed to the Class: (1) $10,000 to PAGA claims, (2) $85,675 in attorneys' fees, (3) $5,000 to the settlement administrator, and (4) $5,000 in service payments to the class representatives ($2,500 for each class representative).  (*Id.* at 2–3.)

Overall, the Settlement provides a net recovery of approximately $194,325 for the Class.  (Mot. at 2.)  The net amount will be split into a designated Rule 23 settlement fund related to the release of state law claims, and an FLSA release fund for release of the FLSA claims.  (*Id.* at 3.)  90% of the fund constitutes the Rule 23 fund and 10% constitutes the FLSA fund.  (*Id.*)  The Rule 23 class payment will be calculated based on the Class Member's pay periods worked during the class period relative to the total number of pay periods worked by the Rule 23 Class.  (Settlement § III.D.1.) The FLSA consideration check will be based on the individual's pay periods worked during the applicable statutory period relative to the total number of pay periods of all individuals who submit an opt-in claim form.  (*Id.* § III.D.2.)

Membership in the Rule 23 Class is automatic, although members will be given an opportunity to opt-out (or object) before the final hearing.  Membership in the PAGA Class is automatic under California Law.  *Alcazar v. OEI Holdings, LLC,* No. 2:19-cv-01209-KJM-AC, 2023 WL 2876833, at *2 (E.D. Cal. Apr. 10, 2023).  Membership in the FLSA collective is not automatic, but Class Members can opt-in by submitting an "FLSA Opt-In Form."  Additionally, as a material term of the Settlement, the Plaintiffs filed a Second Amended Complaint adding the now-named Plaintiffs and clarifying that the FLSA claims here are asserted on behalf of those individuals who are defined as Class Members.

The Parties agree to certification of the Class for purposes of this Settlement only; if the Settlement does not become effective, then the Defendant reserves the

1  right to contest certification of any class and all available defenses to the claims in the

2  action.  (*Id.* § II.H.)

3  **LEGAL STANDARD**

4  **I.    Settlement Agreement**

5        To grant a preliminary approval of a settlement involving class and collective

6  claims, courts must both conditionally certify the Rule 23 class and FLSA collective and

7  find that the settlement terms fall within the range of possible approval.  Under Rule

8  23, a court must determine if it "will likely be able to" both "certify the class for

9  purposes of judgment on the proposal" under Rule 23(a) and Rule 23(b), and

10  "approve the proposal under Rule 23(e)(2)."  Fed. R. Civ. P. 23(e)(1)(B).  Under the

11  FLSA, a court must ask if the members of the collective action are "similarly situated"

12  to the original plaintiffs, *see Campbell v. City of Los Angeles,* 903 F.3d 1090, 1109 (9th

13  Cir. 2018), and whether the settlement is "a fair and reasonable resolution of a bona

14  fide dispute" over FLSA provisions, *Kerzich v. County of Tuolumne,* 335 F. Supp. 3d

15  1179, 1184 (E.D. Cal. 2018).

16        PAGA claims are distinct from class claims.  "Plaintiffs may bring a PAGA claim

17  only as the state's designated proxy, suing on behalf of all affected employees."  *Kim*

18  *v. Reins Int'l Cal., Inc.,* 9 Cal. 5th 73, 87 (2020) (emphasis removed).  Since a PAGA

19  claim is not "a collection of individual claims for relief" like a class action, *Canela v.*

20  *Costco Wholesale Corp.,* 971 F.3d 845, 856 (9th Cir. 2020), PAGA claims "need not

21  satisfy Rule 23 class certification requirements," *Hamilton v. Wal-Mart Stores, Inc.,* 39

22  F.4th 575, 583 (9th Cir. 2022).  However, like class action settlements, PAGA

23  settlements must be approved by the court.  *See* Cal. Lab. Code § 2699(s)(2).  Courts

24  in this circuit apply "a Rule 23-like standard," asking whether the settlement of the

25  PAGA claim is "fundamentally fair, reasonable, and adequate."  *Haralson v. U.S.*

26  *Aviation Servs. Corp*., 383 F. Supp. 3d 959, 971–72 (N.D. Cal. 2019).

27  ////

28  ////

5

## II.    Notice

If conditional certification of the class and collective is warranted and the settlement terms are adequate, courts must also consider if the proposed class and collective notice meet the requirements of both Rule 23 and the FLSA.  For classes likely to be certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances," imposing specific requirements on the contents of the notice.  Fed. R. Civ. P. 23(c)(2)(B).  The FLSA provides that the court must "provide potential plaintiffs 'accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'"  *Adams v. Inter-Con. Sec. Sys.,* 242 F.R.D. 530, 539 (N.D. Cal. 2007) (quoting *Hoffmann-La Roche, Inc., v. Sperling,* 493 U.S. 165, 170 (1989)).  In hybrid Rule 23 and FLSA actions, the notice forms must indicate (1) the hybrid nature of the action; (2) the claims involved in the action; (3) the options that are available to class members in connection with the settlement, including how to participate or not participate in the Rule 23 class action and the FLSA collective action aspects of the settlement; and (4) the consequences of opting-in to the FLSA collective action, opting-out of the Rule 23 class action, or doing nothing.  *Thompson v. Costco Wholesale Corp.,* No. 3:14-cv-02778-CAB-WVG, 2017 WL 697895, at *8 (S.D. Cal. Feb. 22, 2017).

Finally, where parties seek settlement of PAGA claims and class claims in one action, courts "have required the class notice to clearly articulate that even those who do not opt out of a settlement will release PAGA claims and will receive a portion of the PAGA payment."  *Schmidt v. Vision Service Plan,* No. 2:20-cv-2400-KJN, 2023 WL 5613103, at *3 (E.D. Cal. Aug. 30, 2023) (citation omitted); *see also Sakkab v. Luxottica Retail N. Am., Inc.,* 803 F.3d 425, 436 (9th Cir. 2015) ("Unlike Rule 23(c)(2), PAGA has no notice requirements for unnamed aggrieved employees, nor may such employees opt out of a PAGA action."); *Uribe v. Crown Bldg. Maint. Co.,* 70 Cal. App. 5th 986, 1001 (2021), *as modified on denial of reh'g* (Oct. 26, 2021) (explaining that a defining

1    feature of the class action procedure is that a class member may opt out of the class if

2    he or she does not wish to be bound by the result of the suit which PAGA actions do

3    not allow).

**DISCUSSION**

4

5    **I.    Conditional Certification of Rule 23 Class and FLSA Collective**

6        **A. Rule 23 Class**

7        Class certification under Rule 23 requires plaintiffs to satisfy each of the four

8    prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of

9    representation.  Fed. R. Civ. P. 23(a).  Plaintiffs must also establish an appropriate

10   ground for maintaining the class action under Rule 23(b).  *See Walker v. Life Ins. Co. of*

11   *the Sw.,* 953 F.3d 624, 630 (9th Cir. 2020).  The Court finds that both requirements are

12   met here.

13       **1. Rule 23(a)**

14       First, the class must be "so numerous that joinder of all members is

15   impracticable."  Fed. Civ. P. 23(a)(1).  Although "no fixed number. . . satisfies the

16   numerosity requirement, as a general matter, a class greater than forty often satisfies

17   the requirement, while one less than twenty-one does not."  *Ries v. Ariz. Beverages*

18   *USA LLC,* 287 F.R.D. 523, 536 (N.D. Cal. 2012).  Here, there are approximately 80

19   Class Members.  Thus, the numerosity requirement is met.

20       Second, a proposed class can be certified only if there are "questions of law or

21   fact common to the class."  Fed. R. Civ. P. (a)(2).  "[C]ommonality is generally satisfied

22   where. . . 'the lawsuit challenges a system-wide practice or policy that affects all of the

23   putative class members.'"  *Franco v. Ruiz Food Prods., Inc.,* No 1:10-cv-02354-SKO,

24   2012 WL 5941801, at *5 (E.D. Cal. Nov. 27, 2012) (quoting *Armstrong v. Davis,* 275

25   F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California,*

26   543 U.S. 499, 504–05 (2005)).  Here, Plaintiffs allege that they all "share the key

27   question of whether they have been improperly classified as independent contractors

28   and also share common questions of law with respect to their substantive claims."

1    (Mot at 6.)  Since this case presents common questions suitable to resolution "in one

2    stroke" the commonality requirement it is met.  *See Wal-Mart Stores, Inc., v. Dukes,*

3    564 U.S. 338, 350 (2011).

4         Third, "the claims or defenses of the representative parties" must be "typical of

5    the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "Measures of typicality

6    include 'whether other members have the same or similar injury, whether the action is

7    based on conduct which is not unique to the named plaintiffs, and whether other class

8    members have been injured by the same course of conduct.'"  *Ruiz Torres v. Mercer*

9    *Canyons Inc.,* 835 F.3d 1125, 1141 (9th Cir. 2016) (quoting *Hanon v. Dataproducts*

10   *Corp.,* 976 F.2d 497, 508 (9th Cir. 1992)).  Here, the named Plaintiffs allege that they,

11   like all of the Class Members, are drivers who suffered from the same alleged

12   misclassification and resulting wage and hour violations.  Therefore, the typicality

13   requirement is met.  (Mot. at 6–7.)

14        Fourth, the named plaintiffs and their counsel must "fairly and adequately

15   protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Courts consider both

16   whether "(1) [] the named plaintiffs and their counsel have any conflicts of interest with

17   other class members and (2) [] the named plaintiff and their counsel [will] prosecute

18   the action vigorously on behalf of the class."  *Ellis v. Costco Wholesale Corp.,* 657 F.3d

19   970, 985 (9th Cir. 2011) (citation omitted).

20        Here, the Settlement Agreement provides each named Plaintiff with an

21   additional payment of $2,500 as an incentive award for their participation.  Such

22   awards are typical in class action cases and are intended to "compensate class

23   representatives for work done on behalf of the class, to make up for financial or

24   reputational risk undertaken in bringing the action, and, sometimes, to recognize their

25   willingness to act as a private attorney general."  *Rodriguez v. W. Publ'g Corp.,* 563

26   F.3d 948, 958–59 (9th Cir. 2009).  Nevertheless, the Court must consider the propriety

27   of the incentive award based on the actions of the Plaintiffs in protecting the class's

28   interest, the benefit the class has received from those actions and the time and effort

8

1    expended by Plaintiffs in pursuing litigation. *Staton v. Boeing Co.,* 327 F.3d 938, 977

2    (9th Cir 2003).  The proposed incentive award of $2,500 for each Plaintiff amounts to

3    approximately 0.0083% of the Settlement Agreement, or just over 0.016% for both

4    Plaintiffs.  The average total payout to Class Members (assuming all submit an Opt-in

5    Claim Form) is expected to be more than $2,400.  (Mot. at 11.)  This incentive amount

6    is within the bounds of class representative awards that have been granted in other

7    cases. *See Bellinghausen v. Tractor Supply Co.,* 306 F.R.D. 245, 267 (N.D. Cal. 2015)

8    ("Incentive awards typically range from $2,000 to $10,000.").  An award that accounts

9    for 0.016% of the gross settlement amount, although not inappropriate, is on the

10   higher end of what is typically acceptable.

11          The named Plaintiffs agreed to serve as class representatives following the

12   passing of Mr. Sarte, who was the original named Plaintiff.  (ECF No. 62 at 9.)  During

13   the past year, each Plaintiff has dedicated at least four hours of time to the litigation,

14   and both are willing and able to respond to discovery, sit for depositions and

15   represent the interests of absent class members if the Settlement Agreement is not

16   approved.  (Supp. Brief at 9; Decl. of Harold Lichten (ECF No. 62-1) ¶¶ 17–23.)

17   Additionally, both named Plaintiffs will be subject to a general release in exchange for

18   the service payment and have placed themselves in the public eye for this litigation.

19   (Decl. of Harold Lichten ¶ 24.)  Given the efforts of the named Plaintiffs, the Court does

20   not expect that issues regarding the incentive payments will arise.  However, the Court

21   will resolve issues related to the incentive payments at the final approval hearing. *See*

22   *Cisneros v. Airport Terminal Servs., Inc.,* No. 2:19-cv-02798-VAP-SP, 2021 WL

23   3812163, at *9 (C.D. Cal. Mar. 26, 2021) (revisiting the issue of incentive awards at the

24   final settlement hearing).

25          As for Proposed Counsel, it appears that the interests of the parties have been

26   adequately represented.  The Plaintiffs included extensive information in the

27   supplemental briefing about counsels' participation with this litigation, and

28   experience with wage-and-hour litigation in the past. (ECF No. 62 at 7; Decl. of Harold

1  Lichten ¶¶ 3–16; Decl. of Adam Rose (ECF No. 62-2) ¶¶ 2–5.)  The Court is satisfied

2  with the breadth of Counsels' experience and with their explanation of their role in the

3  instant case, as two of the undersigned attorneys personally attended mediation and

4  personally negotiated the settlement here.  (Decl. of Harold Lichten ¶ 9.)  Moreover,

5  settlement discussions occurred with a sense of strengths and weaknesses of litigation

6  based on information regarding Defendant's financial status.  Thus, the Court is

7  satisfied that the requirements for Rule 23(a) have been satisfied for purposes of

8  preliminary approval.

9          **2.  Rule 23(b)**

10         Plaintiffs seek certification under Rule 23(b)(3), which requires that (1) "the

11  questions of law or fact common to class members predominate over any questions

12  affecting only individual members" and (2) "a class action is superior to other available

13  methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P.

14  23(b)(3).

15         "The predominance inquiry asks whether the common, aggregation-enabling,

16  issues in the case are more prevalent or important than the non-common,

17  aggregation-defeating, individual issues." *Tyson Foods v. Bouaphakeo,* 577 U.S. 442,

18  453 (2016) (citation and internal quotation marks omitted).  Wage and hour class

19  actions are likely to be certified under this standard when "the major questions in [the]

20  case arise from [the defendant's] alleged uniform failure to properly calculate wages

21  and overtime, account for meal periods and rest periods, and provide

22  reimbursements." *Smothers v. NorthStar Alarm Servs., LLC,* No. 2:17-cv-00548-KJM-

23  KJN, 2019 WL 280294, at *7 (E.D. Cal. Jan. 22, 2019).  As noted above, common

24  questions of law and fact predominate because all Class Members were subject to

25  Defendant's various violations of California wage laws.  Specifically, the class members

26  worked as delivery drivers for Defendant in California and were misclassified as

27  "independent contractors" when they were actually employees entitled to protection.

28  (Mot. at 2.)  While the Court may not "rely on uniform policies 'to the near exclusion of

1  other relevant factors touching on predominance,'" *Abdullah v. U.S. Sec. Assocs., Inc.,*

2  731 F.3d 952, 964–65 (9th Cir. 2013) (citations omitted), the current record indicates

3  that the policies in question applied to all class members who performed delivery

4  services for the Defendant.  Further, variance appears to exist only to the extent of the

5  number of delivery periods conducted by each class member.  However, this is not a

6  "fact-intensive" determination that would prevent the identified major questions from

7  predominating.  Thus, it appears that common questions predominate.

8      "The superiority inquiry under Rule 23(b)(3) requires determination of whether

9  the objectives of the particular class action procedure will be achieved in the

10 particular case," which "necessarily involves a comparative evaluation of alternative

11 mechanisms of dispute resolution." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1023

12 (9th Cir. 1998) (citation omitted). The Plaintiffs state that this action is superior method

13 of resolving the controversy because of concern around Defendant's ability to sustain

14 a larger judgment or settlement given its financial status.  (Mot. at 11.)  Plaintiffs are

15 concerned the proceeding with the litigation will result in a decreased result for the

16 class members.  (*Id.*)  Defendant does not oppose these statements.

17     Thus, the Court finds that Plaintiffs have met the requirements of Rule 23(b).

18     **B.  Conditional Certification of the FLSA Collective**

19     Plaintiffs seeking conditional certification of a collective action under the FLSA

20 have the burden of showing that they are "similarly situated" to other class members.

21 *Thio v. Genji, LLC,* 14 F. Supp. 3d 1324, 1340 (N.D. Cal. 2014).  Plaintiffs can show they

22 are similarly situated by making "substantial allegations, supported by declarations or

23 discovery, that 'the putative class members were together the victims of a single

24 decision, policy, or plan.'" *Id.* (quoting *Brewer v. Gen. Nutrition Corp.,* No. 4:11-cv-

25 03587-YGR, 2013 WL 100195 at *3 (N.D. Cal. Jan. 7, 2023).  "This determination is

26 made based on a fairly lenient standard, and typically results in a conditional

27 certification." *Id.*

28 ////

In the supplemental briefing, the Plaintiffs allege that all California drivers performed the same job and were subject to the same policies. (Supp Brief at 5.) Specifically, they were required to sign an agreement purporting to classify them as "independent contractors," which failed to pay them any overtime premium and failed to reimburse them for employment-related expenses. (*Id.*) Given the lenient standard for preliminary approval of a collective, the Court finds Plaintiffs have sufficiently demonstrated that they are similarly situated to other employees for the purposes of preliminary certification. *See, e.g., Zaborowski v. MHN Gov't Servs., Inc.,* No. C 12-05109-SI, 2013 WL 1787154 at *4 (N.D. Cal. Apr. 25, 2013) (granting conditional certification where collective members "[had] the same job title; perform[ed] substantially similar activities; [were] governed by the same Provider Services Task Order Agreement, Provider Manual, and Program Summary; and, most importantly, [were] all considered exempt employees that [the defendant did] not pay for overtime").

## II.    Preliminary Approval of the Class Settlement

Preliminary approval of a class settlement is governed by Rule 23(e) and has both procedural and substantive components. Settlement approval is appropriate only where the court finds the settlement is "fair, reasonable and adequate." *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1079–80 (N.D. Cal. 2007). The court is to consider whether: (1) the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, (2) the settlement falls within the range of possible approval; (3) has no obvious deficiencies, and (4) does not improperly grant preferential treatment to class representatives or segments of the class. *Id.* Settlement agreements are considered as a whole, not by their individual components. *Lane v. Facebook, Inc.,* 696 F.3d 811, 818–19 (9th Cir. 2012). Additionally, because the settlement involves FLSA and PAGA claims, the Court must evaluate whether the settlement meets the requirements under those acts.

1    For the reasons discussed below, the Court finds that preliminary approval of

2  the Settlement is appropriate with respect to the Class, FLSA and PAGA claims.

3                **A.  Preliminary Approval Under Rule 23(e)**

4                    **1.  Product of Serious, Informed, Non-Collusive**

5                        **Negotiations**

6    A settlement is presumed fair if it follows sufficient discovery and genuine arm's

7  length negotiation.  *Adoma v. Univ. of Phoenix, Inc.,* 913 F. Supp. 2d 964, 977 (2012).

8  Participation in mediation also "tends to support the conclusion that the settlement

9  process was not collusive."  *Villegas v. J.P. Morgan Chase & Co.,* No 4:09-cv-00261-

10  SBA, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (citation omitted).

11    Here, the parties participated in a mediation with an ADR Neutral, which was

12  unsuccessful.  However, after continued, direct negotiations, there was eventually an

13  agreement to dismiss the FLSA claims, without prejudice, and to resolve the California

14  state law claims on behalf of a proposed class of California drivers.  Prior to the

15  mediation, Defendant provided data regarding the amount of work performed by the

16  putative class and the relevant pay records.  Plaintiffs state that the parties had ample

17  information, expert guidance and intimate familiarity with the strengths and

18  weaknesses of the case.  (Mot. at 10.)  Thus, it appears that the settlement is the result

19  of serious, informed and non-collusive negotiations.

20                **ii.  Within Range of Possible Approval**

21    Under Rule 23(e), a class action may be settled only with the court's approval,

22  and the court may provide such approval "only on finding that it is fair, reasonable,

23  and adequate" after considering whether, among other things, "the relief provided for

24  the class is adequate."  Fed. R. Civ. P. 23(e)(2).

25    Here, Plaintiffs' Counsel received data regarding the amount of work

26  performed by the putative class and the relevant pay records.  Using this information,

27  the Plaintiffs broke down their potential recovery for each Count.  For Count One

28  alleging minimum wage claims pursuant to Cal. Lab. Code §§ 1197, 1194 and Wage

1  Order No. 9., Plaintiffs estimate the California minimum wage damages to be

2  $550,000 for the California class, which is larger than the potential FLSA minimum

3  wage damages (estimated at $332,000) due to the higher minimum wage in

4  California.  (Supp. Brief at 2.)  For Count Two alleging unpaid overtime wage claims

5  under Cal. Lab. Code §§ 1194, 1198, 510, 554 and Wage Order No. 9, Plaintiffs

6  estimate the total overtime damages to be approximately $52,200.  For Count Five

7  alleging claims for failure to provide itemized wage statements under Cal. Lab. Code

8  § 226, Plaintiffs estimate a recovery for approximately $190,000, if they had proven a

9  "knowing and intentional" failure to provide accurate wage statements.  For Count Six,

10  Plaintiffs explain that under the UCL, they would not be allowed double recovery.  For

11  Count Seven alleging unreimbursed expenses under Cal. Lab. Code Sec. 2802,

12  Plaintiffs estimate total damages of approximately $1,400,000.  Plaintiffs state that the

13  Section 2802 claim is the main claim at issue here.

14      The total potential recovery on Plaintiffs' claims pursued under Rule 23 is

15  approximately $2,192,200.  (Decl. of Harold Lichten ¶ 31.)  The total non-PAGA

16  settlement value represents approximately 14% of the potential Rule 23 class wide

17  damages had Plaintiffs succeeded on all of their claims at trial.  The gross settlement

18  figure, $300,000 represents approximately 14% of the theoretical maximum recovery,

19  while the net amount $194,325, represents around 9% of the theoretical maximum.

20  This recovery is within the range approved by other courts in this circuit.  *See e.g.,*

21  *Singh v. Roadrunner Intermodal Servs., LLC,* No. 1:15-cv-01497-DAD-BAM, 2018 WL

22  2412325, at *7 (E.D. Cal. May 29, 2018), *modified*, 2018 WL 4382202 (E.D. Cal. Sept.

23  13, 2018) (approving a settlement of about 12 percent of the maximum damages); *In*

24  *re Omnivision Techs., Inc.,* 559 F. Supp.  2d 1036, 1042 (N.D. Cal. 2008) (approving a

25  settlement of about 9 percent of the estimated maximum).

26      The Parties emphasize that the driving factor in this settlement was Defendants'

27  inability to sustain a larger settlement of judgment, given their financial status.

28  Further, the Plaintiffs express concern about substantial expense, delay and risk if

1   litigation was to continue.  Plaintiffs also admit that that given the lack of reliable time

2   records and other arguments that Defendants would have made regarding its pay

3   records, the actual recovery would likely be less than Plaintiffs' best-case projections.

4   Lastly, each driver would receive a gross amount of approximately $155 per pay

5   period of each driver.  After other fees are removed, the Rule 23 release would be

6   approximately $90 per pay period worked.  Including the FLSA amount, the average

7   total payout to class members would be more than $2,400.

8           Thus, the Court finds that the settlement is within the range of possible

9   approval.

10                  **iii.  No Obvious Deficiencies**

11          Where, as here, a settlement agreement has been negotiated before a class has

12   been certified, the Court must also "undertake an additional search for 'more subtle

13   signs that class counsel have allowed pursuit of their own self-interests and that of

14   certain class members to infect the negotiations.'"  *Kang v. Credit Bureau Conn., Inc.,*

15   No 1:18-cv-01359-SKO, 2023 WL 3751117, at *5 (E.D. Cal. June 1, 2023) (quoting

16   *Briseño v. Henderson,* 998 F.3d 1014, 1023 (9th Cir.  2021)).  Three oft-cited "red

17   flags" of unfair settlements are (1) fees that make up a disproportionately large part of

18   the distribution to the class, (2) "clear sailing agreements" providing for the payment

19   of attorneys' fees separate and apart from the class funds without defense objection,

20   and (3) agreements that permit unpaid fees to revert to defendant (i.e., "reversionary"

21   settlements).  *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 947 (9th Cir.

22   2011) (citations omitted).

23          Here, the maximum attorney's fees contemplated by the Settlement Agreement

24   are relatively small.  In evaluating an award of attorneys' fees, "courts have discretion

25   to employ either the lodestar method or the percentage-of-recovery method."  *Id.* at

26   942 (citations omitted).  The proposed settlement includes an attorney's award of

27   $85,675.00 of the gross settlement amount.  This consists of $75,000.00 as Class

28   Counsel fees payment and an amount not more than $10,675.00 for all expenses

1  incurred as Class Counsel litigation expenses payment.  The $75,000.00 fee would be

2  approximately 25% of the gross settlement, and the total amount would account for

3  approximately 28% of the gross settlement.  The Ninth Circuit typically has a 25%

4  benchmark for attorneys' fees.  *Id*.  Courts in this district have previously approved

5  fees at 33% of the settlement fund for wage-and-hour class actions.  *See Barbosa v.*

6  *Cargill Meat. Sols. Corp.,* 297 F.R.D. 431, 450 (E.D. Cal. 2013) (listing cases where

7  courts approved attorneys' fees of about one-third of the total settlement).

8       The Court will consider Counsels' justifications for the amount requested, as

9  well as any objections, at the final approval hearing.  However, Counsel is reminded

10  that a substantial justification will be necessary for the Court to depart from the 25%

11  benchmark, *see Powers v. Eichen,* 229 F.3d 1249,1256–57 (9th Cir. 2000), and that

12  counsel will need to provide the Court with adequate information to cross-check the

13  proposed award against the lodestar fee, *see Vizcaino v. Microsoft Corp.,* 290 F.3d

14  1043,1050 (9th Cir. 2002).

15       Moreover, there is no reversion to the Defendant.  (*See* Mot. at 4 "[t]his

16  settlement is non-reversionary, meaning that no funds from the settlement, including

17  unnamed funds, will revert to Henry Industries.")  Additionally, there are no "clear

18  sailing" provisions within the agreement.  Lastly, as discussed above, while there is an

19  incentive award provided for the named Plaintiffs, the award is within the range courts

20  have found to be acceptable.  However, the Court cautions Plaintiffs that evidence

21  demonstrating their contributions to the litigation will be required at the final approval

22  hearing.  Thus, the settlement does not appear to have any obvious deficiencies.

23            **iv.  No Preferential Treatment**

24       The fourth factor addresses whether the proposed Settlement Agreement

25  "treats class members equitably relative to each other.'"  *See* Fed. R. Civ. P. 23(e)(2)(D).

26  This inquiry considers both equity between class representatives and unmade class

27  members.  Here, although the named Plaintiffs will be granted an incentive award, for

28  the reasons discussed above, the Court finds that the incentive award does not weigh

1  against settlement approval.  Although the settlement itself accounts for payments to

2  Class Members in separate funds: Rule 23, FLSA Collective and PAGA, the reason for

3  the distinction between the groups is logically permissible based on the statutes of

4  limitation.  As such, the Court finds that here is no preferential treatment issue here.

5  Thus, the Court is satisfied at this stage that Rule 23(e) has been satisfied.

6          **B.  FLSA Component**

7          FLSA settlements must comprise "a fair and reasonable resolution of a bona

8  fide dispute."  *See e.g., Kerzich,* 335 F. Supp. 3d at 1184.  A dispute is "bona fide" if

9  there are "legitimate questions" about the existence and extent of a defendant's FLSA

10  liability.  *Id; see also Selk v. Pioneers Mem'l Healthcare Dist.,* 159 F. Supp. 3d 1164,

11  1172 (S.D. Cal. 2016).  "A court will not approve a settlement of an action in which

12  there is a certainty that the FLSA entitles plaintiffs to the compensation they seek,

13  because it would shield employers from the full cost of complying with the statute."

14  *Kerzich,* 335 F. Supp. 3d at 1184 (citation omitted).  However, if a bona fide dispute

15  between the parties exists, courts often consider many of the same factors that guide

16  preliminary certification of Rule 23 class actions in evaluating the fairness of the FLSA

17  settlement.  *See Maciel v. Bar 20 Dairy, LLC,* No. 1:17-cv-00902-DAD-SKO, 2018 WL

18  5291969, at *4 (E.D. Cal. Oct. 23, 2018).

19          Upon receiving supplemental briefing, the Court is satisfied that a bona fide

20  dispute exists here.  The Plaintiffs contend that the central issue here is whether

21  Defendants were correct in classifying Plaintiffs as "independent contractors," such

22  that they would not be covered by the FLSA, or whether they were employees entitled

23  to FLSA protections.  The Plaintiffs argue, and the Defendants do not dispute, that

24  providing this claim would be "hotly contested."  Even if Plaintiffs would have

25  established liability, Defendants would have "contested the extent of damages under

26  the FLSA." (Supp. Brief at 6.)  Thus, the Court is now satisfied that a bona fide dispute

27  exists here.

28  ////

1     Additionally, the settlement appears to be fair and reasonable given the

2   estimated value of Plaintiffs' FLSA claims.  A release of FLSA claims in exchange for no

3   consideration is not a "fair and reasonable" resolution of a dispute.  *Thompson,* 2017

4   WL 697895, at *8.  Here, Plaintiffs estimate the value of their FLSA claim as $332,000.

5   (Decl. of Matthew Thompson ¶ 6.)  Plaintiffs reiterate that given the Defendant's

6   precarious financial status the amount provided ensures a good value for the

7   aggrieved parties involved.  Thus, the Court grants the FLSA Component for purposes

8   of the preliminary stage.

9          **C. PAGA Component**

10     The SAC's Eighth cause of action asserts a claim for PAGA penalties, on behalf

11   of plaintiffs and all aggrieved employees, for the Labor Code violations asserted in the

12   preceding class claims.  (SAC ¶ 8–9.)  PAGA claims and their settlement are

13   fundamentally distinct from the class claims discussed above.  The Court next assesses

14   whether the Settlement fulfills the statutory requirements of PAGA and is

15   fundamentally fair, adequate, and reasonable in light of the PAGA's policies and

16   purposes.  *See* Cal. Lab. Code § 2699(s)(2) ("The superior court shall review and

17   approve any settlement of any civil action filed pursuant to this part."); *see also*

18   *Haralson,* 383 F. Supp. 3d at 972 (identifying that district courts apply a "Rule 23-like

19   standard" due to the absence of authority governing the standard for review and

20   approval of PAGA settlements).

21          **i.  Statutory Requirements**

22     PAGA allows aggrieved employees to bring an action for civil penalties for

23   labor code violations on behalf of himself and other current or former employees.  *See*

24   Cal. Lab. Code. § 2699(a).  "Plaintiffs may bring a PAGA claim only as the state's

25   designated proxy, suing on behalf of all affected employees."  *Hamilton,* 39 F.4th at

26   588 (citation omitted).  Since an employee's action under PAGA functions as a

27   substitute for an action brought by the government, "a judgment in that action binds

28   all those, including nonparty aggrieved employees, who would be bound by a

1    judgment in an action bought by the government." *Arias v. Superior Ct.,* 46 Cal. 4th

2    969, 986 (2009). Because there is no mechanism for opting out of judgment entered

3    on a PAGA claim, *Amaro v. Anaheim Arena Mgmt., LLC,* 69 Cal. App. 5th 521, 541 n.5

4    (4th Dist. 2021) (cleaned up), a PAGA plaintiff owes a duty to both their fellow

5    aggrieved employees and to the public at large. *See O'Connor v. Uber Techs, Inc.,*

6    201 F. Supp. 3d 1110, 1133–34 (N.D. Cal. 2016).

7         Under PAGA's scheme, civil penalties are distributed between the aggrieved

8    employees, twenty-five percent, and the LWDA, seventy-five percent. Cal. Lab. Code

9    § 2699(i) (2022) (amended July 1, 2024).[1] The proposed settlement must be sent to

10   the LWDA at the same time it is submitted to the Court. Cal. Lab. Code § 2699(s)(2).

11   Finally, aggrieved employees are prohibited from opting out of the settlement. *See*

12   *Morel v. HNTB Corp.,* No. 3:22-cv-00408-AJB-AHG, 2025 WL 242084, at *18 (S.D. Cal.

13   Jan. 17, 2025) (citation omitted).

14        As an initial matter, the Court is satisfied that Plaintiffs' Counsel have provided

15   notice of the settlement to the LWDA. *See* Cal. Lab. Code Section 2699(s)(2). Second,

16   the proposed PAGA payment is $10,000. This amount provides $2,500, or 25%, to

17   aggrieved employees and $7,500, or 75%, to the LWDA in settlement of PAGA claims.

18   Thus, the distribution requirement under PAGA is met. Lastly, the Settlement and

19   Notice provides that PAGA Group Members, all persons who provided courier or

20   delivery services on behalf of Defendant in California from April 11, 2021, through

21   July 17, 2022, cannot opt out from settlement of the PAGA claims. Thus, it is clear that

22   PAGA members cannot opt out of the settlement.

23              **ii.  Fundamental Fairness, Adequacy and Reasonableness**

24        Concerning the fairness of the settlement, "neither the California legislature,

25   nor the California Supreme Court, nor the California Courts of Appeal, nor the [LWDA]

26   _____

27   [1] The Court notes that PAGA has since been amended such that for civil actions brought on or before
     June 19, 2024, the division provides 35% to the aggrieved members and 65% to the LWDA. *See*
     *Martinez v. Sunnova Energy Corp.,* No. 2:24-cv-06346-MRA-MAR, 2025 WL 732350, at *3 (C.D. Cal. Mar.

28   7, 2025).

has provided any definitive answer as to what the appropriate standard is for approval

of a PAGA settlement." *Jordan v. NCI Grp., Inc.,* No. 5:16-cv-01701-JVS-SP, 2018 WL

1409590, at *2 (C.D. Cal. Jan. 5, 2018) (quoting *Flores v. Starwood Hotels & Resorts

Worldwide, Inc.,* 253 F. Supp. 3d 1074, 1075 (C.D. Cal. 2017)).  However, the LWDA

offered the following guidance:

> It is thus important that when a PAGA claim is settled, the
> relief provided for under the PAGA be genuine and
> meaningful, consistent with the underlying purpose of the
> statute to benefit the public and, in the context of a class
> action, the court evaluate whether the settlement meets the
> standards of being 'fundamentally fair, reasonable, and
> adequate' with reference to the public policies underlying
> the PAGA.

*O'Connor,* 201 F. Supp. 3d at 1133.  In line with these general principles, many district

courts have applied a Rule 23-like standard, asking whether the settlement of PAGA

claims is "fundamentally fair, adequate, and reasonable in light of PAGA's policies and

purposes." *Jordan,* 2018 WL 1409590, at *2 (collecting cases).

Where PAGA claims are settled in the same agreement with the underlying

Labor Code claims, courts have looked to the interplay of the two recoveries in

determining whether PAGA's purposes have been served.  *See O'Connor,* 201 F.

Supp. 3d at 1134 ("While a proposed settlement must be viewed as a whole, [citation

omitted] the Court must evaluate the adequacy of compensation to the class as well as

the adequacy of the settlement in view of the purposes and policies of PAGA.  In

doing so, the court may apply a sliding scale.").  Essentially, where the settlement of

Labor Code claims under Rule 23 provides "robust" relief to the class, it supports a

greater reduction in PAGA penalties.  *Haralson,* 383 F. Supp. 3d at 972 (citation

omitted).  However, courts have also cautioned PAGA that settlement claims could be

used as a "bargaining chip" to induce the employer to settlement.  *O'Connor,* 201 F.

Supp. 3d at 1134 (citation omitted).

1    Here, the PAGA allocation makes up 3% of the gross settlement amount of

2    $300,000.  Plaintiffs argue that this allocation is reasonable because it covers a short,

3    one-year period during which time Defendant had started to wind down California

4    operations.  The PAGA period here refers to April 11, 2021, through July 17, 2022.

5    (Settlement § I.BB.)  Further, there are only 104 pay periods covered by the PAGA

6    claims at issue and the estimated total exposure on the PAGA claims is $74,800.

7    (Decl. of Matthew Thompson ¶ 7.)  Lastly, Plaintiff's attorney explains that the

8    Defendant's financial status was a primary consideration in resolving the instant issue.

9    (*Id.* ¶ 8.)  Although the PAGA amount only covers a portion of the recovery, the Court

10    finds that the 3% allocation is higher than what other courts in this district, and in the

11    Ninth Circuit have accepted.  *See, e.g., Cabrales v. Bae Systems San Diego Ship*

12    *Repair, Inc.,* No. 3:21-cv-02122-AJB-DDL, 2024 WL 4994339, at *17 (S.D. Cal. Dec. 5,

13    2024) (approving a PAGA allocation constituting approximately 1% of the maximum

14    settlement fund); *Van Kempen v. Matheson Tri-Gas, Inc.*, No. 4:15-cv-00660-HSG, 2017

15    WL 3670787, at *2 (N.D. Cal. Aug. 25, 2017) (approving allocation of $5,000, or

16    approximately 1%, for PAGA claims out of the $370,000 total settlement fund);  *Ruch*

17    *v. AM Retail Grp., Inc.*, No. 3:14-cv-05352-MEJ, 2016 WL 5462451, at *2, 7 (N.D. Cal.

18    Sept. 28, 2016) (settlement allocating $ 10,000 to PAGA penalties where potential

19    value was over $ 5.2 million).  The Court is satisfied that the PAGA penalties are

20    sufficient here.

21    **III.    Approval of the Class and Collective Notice**

22        **A.  Rule 23 Class Notice**

23    For any class certified under Rule 23(b)(3), "the court must direct to class

24    members the best notice that is practicable under the circumstances."  Fed. R. Civ. P.

25    23(c)(2)(B).  The notice must contain, in plain and clear language: (1) the nature of the

26    action; (2) the definition of the class certified; (3) the class claims, issues, or defenses;

27    (4) the right of a class member to appear through an attorney, if desired; (5) the right

28    to be excluded from the settlement; (6) the time and manner for requesting an

1  exclusion; and (7) the binding effect of a class judgment on members of the class.  *Id.*

2  A settlement notice is satisfactory if it "generally describes the terms of the settlement

3  in sufficient detail to alert those with adverse viewpoints to investigate and to come

4  forward and be heard."  *Churchill Vill., LLC v. Gen. Elec.* 361 F.3d 566, 575 (9th Cir.

5  2004) (internal quotations and citations omitted).

6         Here, the Notice explains that the action alleged that Defendant had

7  misclassified delivery drivers as independent contractors and sought damages for

8  unpaid wages.  The Notice defines the class in the section "How do I know if I am part

9  of the settlement?"  This section explains that an individual is part of the settlement if

10 that individual executed an agreement to perform courier services for Defendant,

11 either personally or on behalf of a corporate entity, and worked for Defendant any

12 time from August 19, 2018, to June 17, 2022, in California.  Additionally, the Notice

13 explains which claims and issues are being released in the section "What am I giving

14 up to get a payment?"  Further, the Notice highlights that there will be lawyers serving

15 as Class Counsel and Class Members in the suit, and states that a Class Member may

16 hire a lawyer to represent that Class Member at their own expense.  The Notice also

17 explains how an individual may exclude themselves from the Settlement and

18 emphasizes that PAGA claims are still released even if an individual requests

19 exclusion.  The Court is also satisfied that the binding effect of a class judgment on the

20 members of the class is adequately explained.

21        The Plaintiffs plan to distribute the Notice to Class Members is detailed in the

22 Settlement Agreement.  No later than 30 calendar days after the Court grants

23 preliminary approval, the Defendant will provide an electronic database with each

24 Class Member's Class Data to the Settlement Administrator.  (Settlement § III.F.2.a.)

25 Where data is unavailable to the Defendant, the Defendant will inform Class Counsel

26 and attempts will be made to secure the data or agree otherwise agree on the Class

27 Data before it is to be submitted to the Settlement Administrator.  (*Id.*)  No later than

28 14 calendar days after receiving the Class Data, the Settlement Administrator will mail

1  the Class Notice Packets to all Class Members via first-class regular U.S. Mail and

2  transmit the packets via email using the mailing and email address information

3  provided by Defendant.  (*Id.* § III.F.2.b.)  Where a Class Notice Packet is returned due

4  to an incorrect mailing address, and not longer than 14 days from receipt of the

5  returned packet, search for a more current address and re-email to the Class Member

6  will occur.  (*Id.* § III.F.2.c.)  The Settlement Agreement also describes what reasonable

7  steps should be taken to locate a proper address.  No later than 10 calendar days

8  before the date by which the Plaintiffs file the motion for final approval of the

9  Settlement, (1) the Settlement Administrator will provide a declaration of due

10  diligence and detailing elections not to participate in the settlement and objections

11  and (2) Plaintiffs shall cause to be filed all Opt-in Claim Forms of Participating

12  Collective Members.  (*Id.* § III.F.2.e–f.)

13         **B.  FLSA Collective Notice**

14         Courts require a separate opt-in procedure for FLSA claims when the

15  settlement includes both Rule 23 and FLSA claims.  *See Hudson v. Libre Tech. Inc.,* No.

16  3:18-cv-00171-GPC-KSC, 2019 WL 5963648, at *9 (S.D. Cal. Nov. 13, 2019) (collecting

17  authorities).  In addition, as this is a hybrid action, the notice forms must indicate (1)

18  that the action is hybrid in nature, (2) the claims involved, and (3) the options that are

19  available to Class members, including how to participate or not participate in the Rule

20  23 Class and FLSA Collective and (4) the consequences of opting-in to the FLSA

21  Collective, opting-out of the Rule 23 Class, or doing neither.  *Thompson,* 2017 WL

22  697895, at *8.

23         Here the Notice clarifies that an individual has to submit an opt-in form to

24  receive an FLSA Consideration Check.  It also states that if an individual excludes

25  themselves from the settlement, that individual has the option to submit an Opt-in

26  Claim Form and receive an FLSA Consideration Check.  Further, the Notice explains

27  that if an individual excludes themselves and fails to submit an Opt-In Claim Form,

28  they will not receive any money related to the Class or FLSA settlements.  Again, the

1  Notice explains the claims released.  However, prior to the Final Approval of Class

2  Settlement, the Court will require that the Plaintiffs further clarify the hybrid nature of

3  the action so that the Notice specifically states that the action involves both Rule 23

4  and FLSA claims on the first page.  Although the Notice currently states which claims

5  have been released, for clarity purposes the Notice should explain more clearly the

6  fact that the FLSA claims here have been dismissed without prejudice.  The Plaintiffs

7  shall also specify the date by which Class Members are to file an Opt-In Filing Form.

8  The Plaintiffs are directed to file an updated Notice with the Court within seven days of

9  this Order to reflect the above-cited concerns.

10  **IV.    Appointment of the Class Representatives, Class Counsel and**

11  **Settlement Administrator**

12  For the reasons discussed above, the Court finds that the named Plaintiffs have

13  adequately represented the interest of the Class by providing information and

14  documents to their counsel and devoting their personal time to pursuit of this

15  litigation.  They have stepped into their role after the passing of Mr. Sarte and have

16  expended time and resources on this litigation and are prepared to take on additional

17  duties should the Settlement Agreement fail.  Thus, the Court approves of the Class

18  Representatives.

19  Next, the Court approves Harold L. Lichten of Lichten & Liss-Riordan, P.C, Adam

20  Rose of the Law Office of Robert Starr and Jeff Vollmer of Goodwin & Goodwin, LLP as

21  Class Counsel.  The parties represent that the class counsel have "expended

22  significant efforts in informal discovery, mediation efforts, showing that they have

23  vigorously prosecuted this action." (Mot. at 7.)  Moreover, the Court finds that

24  Counsel has been involved personally in the instant litigation and has extensive

25  experience in wage-and-hour claims such that the interests of the Class and Collective

26  members would be adequately represented.

27  Finally, the Parties have agreed upon and propose that the Court appoint

28  Phoenix Group to serve as the Settlement Administrator for the capped fee of $5,000.

This is consistent with or better than the costs for such services in other similar settlements. *See e.g., Razo v. AT&T Mobility Servs.*, LLC, No. 1:20-cv-0172-JLT-HBK, 2022 WL 4586229, at *17 (E.D. Cal. Sept. 29, 2022) (approving a maximum settlement administrator fee of $30,000 for a settlement with a GSA of $575,000); *see also, Martinez*, 2023 WL 2655541, at *17 (approving a maximum administrator fee of $29,558 for a settlement with a GSA of $400,000). Based on the recommendation of the Parties, the Court shall appoint Phoenix Group as the Settlement Administrator.

## V.    Further Scheduling and Fairness Hearing

"Courts have long recognized that settlement class actions present unique due process concerns for absent class members." *In re Bluetooth,* 654 F.3d at 946. To protect the rights of absent class members, Rule 23(e) requires the court to approve such settlements "only after a fairness hearing. . . ." *Id.;* Rule 23(e)(2). For clarity, the Court now reiterates some of the remaining deadlines in the Settlement Agreement, the Notice, and the proposed order. This section is not comprehensive.

| | |
|---|---|
| Deadline for Defendant to provide to Settlement Administrator all required information about the putative class members. | 30 days after the Court enters an Order granting Preliminary Approval of the Settlement |
| Deadline for mailing and emailing Notices by the Settlement Administrator. | 14 days after receiving the Class Data |
| Last day for Class Counsel to submit motion for attorneys' fees as costs. | Thirty-Five days before the Exclusion/Objection Deadline |
| Last day for Class Counsel to file their papers in support of final approval of the Settlement Agreement | Thirty-five days before the Fairness Hearing |

| Exclusion/Objection Deadline | Postmarked no later than sixty days after the Settlement Administrator mails the Class Notice Packets |
|---|---|
| Opt-in Claim Forms Filing Date | no later than 10 days before the date by which the Plaintiffs file the motion for approval of the Settlement |
| Fairness Hearing Date | January 22, 2026 |

## CONCLUSION

For the reasons discussed above, it is HEREBY ORDERED that:

1. Plaintiffs' unopposed Motion for Preliminary Approval of Settlement is GRANTED;

2. The Settlement Class is certified pursuant to Rule 23 for settlement purposes only;

3. The FLSA Collective is certified pursuant for settlement purposes only;

4. Named Plaintiffs Christine McEvoy and Leng Sam are confirmed as Class Representatives

5. Counsel Harold Lichten and Matthew W. Thomson of Lichten & Liss-Riordan P.C., Adam Rose of Law Office of Robert Starr, and Jeff Vollmer of Goodwin & Goodwin LLP are confirmed as Class Counsel;

6. Phoenix Group is hereby appointed as Settlement Administrator;

7. The Settlement Agreement is preliminarily approved as fair, reasonable, and adequate;

8. The parties' plan for notice to the class is the best notice practicable and satisfies Rule 23

9.  The parties are ordered to submit a revised Notice within seven days of this Order; and

10. The parties shall follow the deadlines herein, as delineated by the Settlement Agreement.  A Fairness Hearing is scheduled for January 22, 2026, at 1:30 P.M. in Courtroom 7 of the Matsui Courthouse, 501 I. St., Sacramento, CA, 95814, before District Judge Daniel J. Calabretta.

IT IS SO ORDERED.

Dated:   **July 7, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC6 – Sarte22cv01678.pacs_v1