UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHRISTINE MCEVOY, et al.,

          Plaintiff,

    v.

HENRY INDUSTRIES,

          Defendants.

No. 2:22-cv-01678-DJC-SCR

ORDER

On July 8, 2025, the Court granted preliminary approval of the proposed class settlement.  Plaintiffs now seek final approval of the class action, the FLSA collective and PAGA settlement.  Plaintiffs also have filed a separate motion requesting attorney's fees and costs.  Defendant does not oppose either request.  The Court held a final fairness hearing on January 22, 2026.  The Court has not received any objection to final approval.  For the reasons stated below, the Court will approve the settlement, award $75,000 of the settlement fund in attorney's fees, permit $10,645.00 in litigation costs, and grant service awards of $2,500 to each of the named Plaintiffs.

**BACKGROUND**

The Court previously discussed the factual background of this action in its Preliminary Approval Order.  (*See* Preliminary Approval Ord. (ECF No. 63) at 2–4.)  In

1

short, Plaintiffs Christine McEvoy and Leng Sam seek approval of their Rule 23 class, FLSA collective and Private Attorney General Act ("PAGA") representative action settlement on behalf of themselves and similarly situated individuals employed by Defendant Henry Industries, Inc.  (*See* Mot. Final Approval (ECF No. 69) at 2–3.) Broadly, Plaintiffs allege that Defendant violated state and federal laws through the classification of drivers as non-employee independent contractors when they were, in fact, employees entitled to various legal protections.  (*Id.* at 2.)

After an unsuccessful attempt at mediation with a third-party neutral, the Parties continued negotiations which resulted in an agreement involving a dismissal of the FLSA claims asserted on behalf of a national collective without prejudice, and a resolution of California state law claims on behalf of a proposed class of California drivers (the "Agreement").  (Mot. Final Approval at 1; Agreement (ECF No. 69-1) § II, ¶ G.)  The Agreement includes a non-reversionary Gross Settlement Amount of $300,000.  (Agreement § III, ¶ B.)  The settlement fund is to be allocated as follows: $10,000 for the PAGA payment; $85,645 ($75,000 + 10,645[1]) for attorneys' fees and costs; $5,000 for settlement administration; and $5,000 for service payments.  (Mot. Final Approval at 4–5; Agreement § III, ¶ C.)  The remaining $194,355 is the approximate value of the Net Settlement Amount ("NSA") for distributing to the participating Rule 23 Class and FLSA Collective Members.  (Mot. Final Approval at 4; Agreement § III, ¶ D.)

On July 8, 2025, the Court conditionally certified the Rule 23 Class and FLSA Collective, preliminarily approved the Agreement, appointed Phoenix Class Action Administration Solutions ("Phoenix") as Class Administrator, approved Plaintiffs Christine McEvoy and Leng Sam as Class Representatives, and appointed Harold Lichten and Matthew Thompson of Lichten & Liss-Riordan P.C., Adam Rose of Law

---

[1] Previously, Class Counsel estimated their costs to be at $10,675.00.  However, the amount now requested is now thirty dollars less.  According to the terms of the Agreement, the money will return to the Class Fund to be distributed amongst the Participating Class Members.  (Agreement, § III, ¶ C.2.)

Office of Robert Starr, and Jeff Volmer of Goodwin & Goodwin LLP as Class Counsel. (*See* Preliminary Approval at 26–27.)  The Court subsequently approved the Notice proposed by the Parties on August 5, 2025.  (ECF No. 65.)

Following preliminary approval of the Agreement, Defense Counsel sent Phoenix a data file with names, last known mailing addresses, Social Security numbers, emails (where available) and Active Delivery Service Periods for each Class Member during the Class Period.  (Lee Decl. (ECF No. 70) ¶ 3.)  The final mailing list contained 108[2] individuals identified as Class Members.  (*Id.* ¶ 5.)  Additionally, 77 individuals provided emails to which the Notices were also sent.  (*Id.*)

As of January 13, 2025, fourteen Notices were returned to Phoenix without any return addresses.  (*Id.* ¶ 6.)  Of those fourteen, Phoenix was able to locate an updated address for eight individuals. (*Id.*)  Six Notices remain undeliverable.  (*Id.* ¶ 7.)  Phoenix has received zero requests for exclusion from Class Members, zero Notices of Objection from Class Members and zero Active Delivery Service Period disputes from Class Members.  (*Id.* ¶¶ 8–10.)  The deadline to object and/or request exclusion was October 27, 2025.  (*Id.* ¶ 9.)  Further, Phoenix received 23 valid and timely Opt-In Claim Forms from Collective Members, which represents approximately 21% of the 108 Collective Members identified.[3]  (*Id.* ¶ 11.)  The deadline to opt-into the Collective Settlement was December 8, 2025.  (*Id.*)

Based on the calculations stipulated to in the Agreement, 90%, or $174,919.50, of the NSA shall be paid to Participating Class Members, and 10%, $19,435.50, shall be paid to 23 Participating Collective Members.  (*Id.* ¶¶ 14–15; Agreement § III, ¶ D.)  Additionally, $10,000 of the GSA has been allocated toward penalties under PAGA as follows: 75%, or $7,500 to the LWDA, and 25%, or $2,500, to current and formerly

---

[2] Initially, there was an estimated 80 Class Members, but Defendant located additional class members in August 2025 when reviewing its final class list. (Mot. Final Approval at 1 n.1)

[3] During the Opt-In Period, Phoenix received an Opt-In Claim from Omar A. Lopez, but upon further review it was determined that Mr. Lopez did not perform work during the Class or PAGA periods and was therefore ineligible for inclusion in the Settlement.  (*Id.* ¶ 12.)

hourly non-exempt individuals who are or were employed by Defendant during the PAGA period. (Lee Decl. ¶ 16; Agreement § III, ¶ C.3.) There are 28 aggrieved employees who will receive an equal share of approximately $89.29. (Lee Decl. ¶ 16.)

Plaintiffs now move for an Order: (1) confirming certification of the settlement class for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23(c), along with appointment of Christine McEvoy and Leng Sam as class representatives, and Harold Lichten and Matthew W. Thomson of Lichten & Liss-Riordan, P.C., Adam Rose of Law Office of Robert Starr, and Jeff Vollmer of Goodwin & Goodwin, LLP as Class Counsel; (2) granting Plaintiffs' Motion for Final Approval Class Settlement on the grounds that its terms are fair, reasonable, and adequate; (3) granting Plaintiff's Motion for Attorneys' Fees and Costs; (4) approving the requested service payments to the named plaintiffs and class representatives; (5) approving the FLSA settlement of all opt-in Plaintiffs; (6) approving the PAGA settlement; and (7) dismissing the case with prejudice.

## MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

### I.   Final Class Certification

In granting preliminary approval of the proposed settlement, the Court provisionally certified the class for purposes of settlement, finding that the requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(3) had been met. (*See generally* Preliminary Approval Ord.) The Court also certified the proposed FLSA Collective because Plaintiffs made a plausible showing that they were similarly situated to other Class Members. (*Id.*) The Court's present findings on the adequacy of the class remain the same as there has been no change in the facts underlying the Court's determination and there have been no objections to the certification of the Class or Collective. *See Carlin v. DairyAmerica, Inc.,* 380 F. Supp. 3d 998, 1008 (E.D. Cal. 2019) (collecting cases for the proposition that a court need not repeat its class certification for final approval if the facts have not changed and no objections were raised). The Agreement defines the Class as "all persons who executed an agreement

4

with Defendant Henry Industries and provided courier or delivery services on behalf of Defendant in California during the Settlement Period (defined as August 19, 2018, through June 17, 2022 (the "Settlement Period")), and excluding those persons who opt-out," (Settlement, § I, ¶ C), and that they seek to certify a Collective[4] that corresponds to the Rule 23 class definition (ECF No. 62 at 4).  Accordingly, the Court adopts its prior findings and holds that the Class and Collective are certified for the purposes of this settlement.

For the reasons stated in the prior order, the Court also reaffirms the appointment of Plaintiffs Christine McEvoy and Leng Sam as Class Representatives and Harold Lichten and Matthew Thompson of Lichten & Liss-Riordan P.C., Adam Rose of Law Office of Robert Starr, and Jeff Volmer of Goodwin & Goodwin LLP as Class Counsel for purposes of this settlement.

## II.    Adequacy of Notice

The Court also previously approved both the content of the Notice and the means of distributing the Notice.  (*See* Preliminary Approval Ord. at 21–24; ECF No. 65.)  The content and means of distribution remain unobjected to and their adequacy as stated in the Court's prior orders remains clear.  In particular, the Court finds that the Notice is adequate given it provided an explanation of: (1) the claims; (2) the terms of the Agreement; (3) each Class Member's share of the Settlement; (4) release of Class Members' claims; (5) Class Members' rights to opt-out of the Rule 23 Class, opt-in to the FLSA Collective, or object to the Settlement; and (6) details of the final approval hearing.  Thus, the Notice "generally describe[d] the terms of the [S]ettlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard" and notified tentative Class Members of "the opportunity to opt-out and individually pursue any state law remedies that might

---

[4] In previous briefing Class Counsel noted that even though the Settlement does not independently defined in the settlement agreement, the Second Amended Complaint defines the collective to include "any delivery drivers who have worked for Defendant in California since three years prior to the filing of this case, who may choose to 'opt-in' to this case."  (SAC (ECF No. 49) ¶ 34.)

provide a better opportunity for recovery." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotations and citations omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 338 (2011); Fed. R. Civ. P. 23(c)(2)(B). In addition, according to Phoenix, the Notice has now been mailed to all 108 Class Members. (Lee Decl. ¶ 5.) Six Notices remain undeliverable. (*Id.* ¶ 7.) Thus, the Court continues to be satisfied with the procedure used to locate Class Members and provide them with the Notice. *See* Fed. R. Civ. P. 23(c)(2)(B), (e)(1). Given the above, the Court finds that the Parties have provided the Class Members with adequate notice of the Agreement per the Court's order.

## III.     Final Approval of Class Action Settlement

At final approval, the Court must determine if the Settlement Agreement, as a whole, is "fair, adequate, and free from collusion." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012). This requires the Court to consider the *Hanlon* factors which are: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Id.* Given that settlement here was reached before class certification was formally granted, "settlement approval requires a higher standard of fairness" in order to "ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id.* (internal quotations removed). The Court is also obligated to consider the factors described in *In re Bluetooth* to investigate "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Products Liability Litigation ("In re Bluetooth")*, 654 F.3d 935, 946–47 (9th Cir. 2011). In so

doing, however, the Court is "mindful that the law favors the compromise and settlement of class action suits." *Carlin*, 380 F. Supp. 3d at 1009.

### A. The Strength of Plaintiff's Case

In evaluating the strength of a case, the Court must "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989). The Court need not, however, "reach any ultimate conclusions concerning the contested issues of fact and law" regarding the underlying dispute. *Id.* at 1415–16.

Although Plaintiffs believe in the merits of their claims, they previously admitted that a lack of reliable time records and other arguments that Defendant would likely have made regarding its pay records would have hindered recovery. (Mot. Final Approval at 7–8.) Plaintiffs also emphasize that a "driving factor in settlement negotiations" was "Defendant's financial condition and Plaintiffs' concerns that the Defendant would be unable to sustain a higher judgment or settlement amount." (*Id.* at 8.) Accordingly, this factor weighs in favor of approving the Settlement Agreement.

### B. The Risk, Expense, Complexity and Likely Duration of Further Litigation

In general, lengthy litigation can be costly and time consuming for all parties and presents numerous risks. Because of this, courts recognize that "approval of settlement is preferable to lengthy and expensive litigation with uncertain results." *Carlin*, 380 F. Supp. 3d at 1010 (internal citations and quotations removed).

Both Parties continue to acknowledge Defendant's precarious financial situation in seeking to settle. (Mot. Final Approval at 7–8.) Ongoing litigation would be costly and would minimize the monetary recovery by all Class Members. In addition, at the time that the Parties agreed to the Agreement, the Court had not yet granted class certification, so Plaintiffs faced the risks inherent in certifying a class and maintaining that certification through trial. Finally, it is well recognized that judicial policy favors settlement in class action litigation due to the lengthy and expensive nature of such

litigation.  *See Pilkington v. Cardinal Health, Inc. (In re Syncor ERISA Litig.)*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).  Thus, this factor weighs in favor of approving the Agreement.

### C.  The Amount Offered in Settlement

In determining whether a settlement agreement is substantively fair to the class, courts must balance the value of plaintiffs' expected recovery against the value of the settlement offer.  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).  However, the Ninth Circuit has explained that "the proposed settlement is 'not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.'"  *Martinez v. Semi-Tropic Coop. Gin & Almond Huller*, Inc., No. 1:19-cv-1581-JLT-CDB, 2023 WL 3569906, at *14 (E.D. Cal. May 19, 2023) (quoting *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (citations omitted)).  In addition, the "absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529.

Here, the Class consists of 108 employees of the Defendant.  (Lee Decl. ¶ 3.) The GSA, $300,000, represents approximately 14% of the Rule 23 theoretical maximum recovery.  (Preliminary Approval Ord. at 14.)  Further, Plaintiffs explain that approximately 60 class members will receive shares greater than $1,000 for their Rule 23 claims.  (Mot. Final Approval at 5.)[5]  The average FLSA consideration payment is approximately $800 (*id.* at 13,) and each aggrieved employee under PAGA will receive $89.29 for settlement of their PAGA claims (Lee Decl. ¶ 16.).  This Agreement is reasonable when compared with other wage and hour settlements approved in recent years by California federal courts.  *See, e.g., Sarabia v. Ricoh USA, Inc.*, No.

---

[5] Although the Parties do not explicitly provide the average recovery for the Rule 23 fund, upon the Court's own calculations, the average payout appears to be $1,619.63.

8:20-cv-00218-JLS-KES, 2023 WL 3432160, at *1, 5 (C.D. Cal. May 1, 2023) (finding wage and hour class action settlement with an average net payout of $1,119 per class member reasonable); *Mondrian v. Trius Trucking, Inc.*, No. 1:19-cv-00884-ADA-SKO, 2022 WL 6226843, at *6–7 (E.D. Cal. Oct. 7, 2022) (determining wage and hour class and collective action settlement reasonable where average class member received $1,528.81); *Bellinghausen v. Tractor Supply Co.,* 306 F.R.D. 245, 256 (N.D. Cal. 2015) (finding a wage and hour class settlement fair where the settlement fund represented between 9% and 27% of the total potential recovery).

Accordingly, this Agreement is a good result for the Class and eliminates the risks, expenses, and delay associated with continued litigation.  Given the lack of objections, the Court presumes that the terms of the Settlement are favorable to the Class Members.  *Nat'l Rural Telecomms. Coop,* 221 F.R.D. at 529 ("The absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").

### D.  The Extent of Discovery Completed and the Stage of the Proceedings

While discovery can be beneficial in obtaining a fair settlement, "[i]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (internal citations and quotations removed).  To that end, a court may approve a proposed class settlement where the parties obtained sufficient discovery "[to] allow[ ] the parties to form a clear view of the strength and weaknesses of their case[,]" *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013), and is the result of genuine arms-length negotiation, *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528.

Here, the Parties exchanged complete and detailed pay records for the class, which informed the basis of Plaintiffs' damages calculations prior to mediation.  (Mot.

Final Approval at 10.)  Further, Plaintiffs obtained confidential records to assess Defendant's financial viability and its ability to pay a larger settlement or judgment. (*Id.*)  Plaintiffs have also previously represented that they reached the Agreement was after continuing discussions following failed negotiations with a third-party neutral. (*See* Preliminary Approval at 13.)  Due to the apparent sufficiency of the discovery obtained and the arms-length negotiations, this factor weighs in favor of approval.

### E.  The Experience and Views of Counsel

As previously noted by the Court, Class Counsel are experienced in litigating employee class action suits across California.  "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  *Principe v. Ukropina (In re Pac. Enters. Sec. Litig.)*, 47 F.3d 373, 378 (9th Cir. 1995).  Given Class Counsel's apparent experience and view that this settlement is "fair, adequate, and reasonable," (Mot. Final Approval 10), the Court finds that this factor weighs in favor of approval.

### F.  The Presence of a Governmental Participant and the Reaction of the Class Members to the Proposed Settlement

There is a strong presumption of favorableness in the absence of many objections to a settlement.  *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 525. Moreover, no objections were raised at the Final Fairness Hearing.  As such, the reaction of the Class Members to the proposed settlement weighs in favor of approving the Agreement.

### G.  Absence of Collusion

In addition to the *Hanlon* factors, the Court must also consider whether the settlement is the product of collusion.  *See In re Bluetooth*, 654 F.3d at 946–47.  The three signs of collusion identified by the Ninth Circuit are "when counsel receive a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing' arrangement (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns

unclaimed fees to the defendant." *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015) (internal quotations and citations removed).

Here, no "red flags" are raised. As will be discussed below, Class Counsel's request for attorney's fees is not disproportionate. Further, the Agreement has no "clear sailing" provision, and includes no reverter. (Mot. Final Approval at 13.)

After considering all the applicable factors, the Court concludes the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

### H.  Final Approval of FLSA Collective Settlement

The Settlement Agreement releases claims under the FLSA. (Mot. Final Approval at 3.) FLSA claims can be settled only with the supervision and approval of the United States Department of Labor or a federal district court. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982); *Ambrosino v. Home Depot U.S.A.*, Inc., No. 11-cv-1319-L-MDD, 2014 WL 3924609, at *1 n.1 (S.D. Cal. Aug. 11, 2014) (collecting cases indicating that "district courts in the Ninth Circuit have followed *Lynn's Food Stores*"). A settlement warrants approval if it "reflect[s] a reasonable compromise of disputed issues." *Lynn's Food Stores*, 679 F.2d at 1354.

First, the Court must determine whether there is a bona fide dispute over Defendants' FLSA liability. *See id*. Here, Plaintiffs and those similarly situated worked for Defendants signed an agreement to perform work for Defendant as an "independent contractor" rather than an employee. However, Plaintiffs' FLSA claims require the existence of "employer-employee relationships." (Mot. Final Approval at 14.) Accordingly, there would have been disputes over the classification of Plaintiff's status. *Johnson v. Serenity Transp., Inc.,* No. 3:15-cv-02004-JSC, 2020 WL 7260059, at *2 (N.D. Cal. Dec. 10, 2020) (finding bona fide dispute where parties disputed "Plaintiffs' classification status and Defendants' liability under California and federal wage and hour laws throughout this case"). Moreover, Plaintiffs explain that even if they successfully established liability, the extent of damages under the FLSA would have been disputed. (Mot. Final Approval at 14.) In particular, the lack of concrete

11

records would have resulted in disputes on the amount and extent of minimum wage and overtime damages owed. (*Id.*) Based on this information, the Court finds that there is a bona fide dispute as to the extent and value of Plaintiffs' FLSA claims.

Second, the Court considers whether the compromise is fair and reasonable. The Court previously found that the Settlement was fair and reasonable considering the value of Plaintiffs' FLSA claims and the circumstances under which this Settlement is executed. The Court finds no reason to reconsider that holding now, particularly given that each Participating Class Member will recover, on average, is approximately $800. (Mot. at 13.) Plaintiffs also estimated $332,000 in FLSA minimum wage damages for the entire class. (*Id.* at 14.) With approximately 25% of individuals submitting an opt-in form, the estimate for the total FLSA minimum wage damages in the group is approximately $83,000. (*Id.* at 15.) As such, the total FLSA payout to the twenty-three opt-in Collective Members is approximately $19,400. (*Id.*) Moreover, the Agreement provides "separate settlement funds for the FLSA class and the Rule 23 class," *Millan v. Cascade Water Services, Inc.*, 310 F.R.D. 593, 602 (E.D. Cal. 2015), which favors approval. *See Thompson v. Costco Wholesale Corp.,* No. 14-cv-02778, 2017 WL 697895, at *8 (S.D. Cal. Feb. 22, 2017) (stating that courts have approved settlements releasing both FLSA and Rule 23 claims only when parties expressly allocate settlement payments to FLSA claims). Based on these factors, the Court finds that the settlement is reasonable and provides meaningful relief given the inherent risks in continued litigation over the issues disputed in this action.

As such, the Court approves the Settlement as it pertains to the Class Members' FLSA claims.

## I.   Final Approval of PAGA Penalties

"A PAGA representative action is . . . a type of qui tam action" where a private plaintiff pursues a dispute between an employer and the California LWDA as the proxy or agent of the state. *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019); Cal. Lab. Code § 2699(a). "[B]ecause a settlement of PAGA

claims compromises a claim that could otherwise be brought by the state," courts must "review and approve any [PAGA] settlement." *Ramirez v. Benito Valley Farms, LLC*, No. 5:16-cv-04708-LHK, 2017 WL 3670794, at *2 (N.D. Cal. Aug. 25, 2017); Lab. Code § 2699(s).  Proposed settlements must also be submitted to the LWDA.  Lab. Code § 2699(s).  No binding authority sets forth the proper standard of review for PAGA settlements; however, California district courts often apply "a Rule 23-like standard, asking whether the settlement of the PAGA claims is 'fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes.'" *Arredondo v. Sw. & Pac. Specialty Fin., Inc.*, No. 1:18-cv-01737-DAD-SKO, 2022 WL 2052681, at *9 (E.D. Cal. June 7, 2022) (quoting *Haralson*, 383 F. Supp. 3d at 972).

Here, $10,000 is set aside for settlement of PAGA claims.  (Agreement § III ¶ C.3.)  The $10,000 has been allocated as follows: 75%, or $7,500 to the LWDA, and 25%, or $2,500, to current and formerly hourly non-exempt individuals who are or were employed by Defendant during the PAGA period.  (Lee Decl. ¶ 16.)  There are 28 aggrieved employees who will receive an equal share of approximately $89.29.  (*Id.*)  Plaintiffs estimate the total exposure on Defendant's PAGA Claims to be $74,800.  (Mot. Final Approval at 15 citing (ECF No. 58 at ¶ 7).)  While the $10,000 is only a portion of the total PAGA exposure, Class Counsel represents that the overall Agreement provides significant benefit to workers, and the amount is reasonable as a percentage of the common fund.  Additionally, counsel represented to the Court that there have been no objections from the LWDA.

Therefore, the Court approves the Agreement's $10,000 PAGA penalty.

## MOTION FOR ATTORNEY'S FEES AND COSTS

Along with the Motion for Final Approval, the Parties filed a Motion for Attorney's Fees and Costs.  (Mot. Attorneys' Fees (ECF No. 66).)  The Motion is unopposed.  The Court will also analyze the propriety of the award for the Class Representatives.  Because the Parties' requests are reasonable under the applicable

13

legal standards, and because there is no opposition to the requests, the Court GRANTS the Motion for Attorneys' Fees and Costs.

## I.  Attorney's Fees

Attorney's fees may generally be awarded in a settlement of a certified class action however, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941.  Courts will analyze the reasonableness of attorney's fees based on either a percentage of the fund analysis or the lodestar method. *Id.* at 942.  Here, the Parties' request is based on the percentage method, but Class Counsel have also briefed the lodestar cross-check method.  The Court will consider both to determine whether the request is reasonable. *See id.* at 944 (recommending that courts apply either the percentage of the fund or the lodestar method but cross-check the appropriateness of the determined amount by employing the other).

The requested attorneys' fees – $75,000 – represents 25% of the GSA.  (Mot. Attorneys' Fees at 1.)  The benchmark in the Ninth Circuit when analyzing the reasonableness of attorney's fees is 25% of the total settlement award. *Hanlon*, 150 F.3d at 1029 ("This circuit has established 25% of the common fund as a benchmark award for attorney fees.").  Class Counsel's request, which is the benchmark amount, is reasonable.  The Court will next cross-check the request with the lodestar amount.

Under the lodestar analysis, the Court considers whether the requested fee is reasonable by comparing the requested fee against the "the lodestar figure [which] is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941.  "The court may then enhance the lodestar with a 'multiplier', if necessary, to arrive at a reasonable fee in light of all the circumstances of

the case." *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995).

Here, Class Counsel note that they have accrued more than 300 hours litigating this action. (Lichten Decl. (ECF No. 66-1) ¶ 20.) Class Counsel splits this into hours accrued by attorney Matthew Thompson, who has approximately twelve years of experience representing workers in wage-and-hour cases and worked around 103 hours; attorney Adam Rose, who has more than twenty-five years of experience representing plaintiffs in California and worked 90 hours; and attorney W. Jeffrey Vollmer, who has approximately twenty years of experience, who worked around 71 hours. (*Id.*) Class Counsel indicates that the time records for counsel from Law Office of Robert Starr and Goodwin & Goodwin were contemporaneously recorded in the firms' respective billing software. (*Id.* ¶¶ 21–22.) Attorney Thompson, from Lichten & Liss-Riordan, P.C. ("LLR"), also had his time contemporaneously recorded with the firms' billing software. (*Id.* ¶ 21.) Attorney Lichten, who is a founding partner of LLR, no longer uses contemporaneous logs of his time, but provided a "very conservative estimate" of his time litigating this matter. (*Id.*)

Courts in this district are generally willing to approve rates from $200 up to as high as $650 or $750 an hour based on the seniority of the attorneys in question. *See American Multi-Cinema, Inc. v. Manteca Lifestyle Ctr., LLC*, No. 2:16-cv-01066-TLN-KJN, 2024 WL 1312209, at *3 (E.D. Cal. Mar. 26, 2024); *see also Jones v. Tirehub LLC*, No. 2:21-cv-0564-DB, 2024 WL 2132611, at *11 (E.D. Cal. May 13, 2024). Here, the Parties argue that if the Court were to apply a bended rate of $500 per hour solely for the time of attorneys Thompson, Vollmer and Rose – who are all partners at their law firms – the total lodestar amount is $132,000 (264 hours x $500 per hour). (Mot. Attorneys' Fees at 10.) This amount is nearly double what the requested amount under the percentage of the fund method. Thus, the lodestar cross-check further confirms that the requested attorneys' fees are appropriate and reasonable.

Accordingly, Class Counsel are awarded $75,000 in attorneys' fees to be taken from the total settlement amount and divided amongst counsel as managed by the Phoenix Group.

## II.   Costs

Class Counsel is entitled to reimbursement of litigation costs from the GSA in order to spread the costs of the suit amongst class members. *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1120 (9th Cir. 2002). "Such an award of expenses should be limited to typical out-of-pocket expenses that are charged to a fee paying client and should be reasonable and necessary." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (E.D. Cal. 2007).

Here, Counsel requests $10,645.00 in litigation expenses. (Mot. Attorneys' Fees at 11.) The costs are broken down as follows: mediation costs – $7,950.00; LWDA filing fees – $150.00; Pro Hac Vice related costs for LRR attorneys – $695.00; Pro Hac Vice related costs for attorney Vollmer - $300.98; Service of Process – $1,549.49. (Lichten Decl. ¶ 23.) Since these costs are typically within those that courts typically approve, *see In re Immune Response Securities Litigation*, 497 F. Supp. 2d at 1177–78, the Court GRANTS Class Counsel's request for reimbursement of $10,645.00 in costs incurred while litigating this matter.

## III.   Class Representative Service Awards

Courts often afford modest compensation to Class Representatives based on the extra time required to represent the class as named plaintiffs to an action.

> The criteria courts may consider in determining whether to make an incentive award include: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken*, 901 F. Supp. at 299.

Here, the Agreement includes a request for $2,500 to each of the named Representatives – Christine McEvoy and Leng Sam.  (Mot. Final Approval at 17.)  The award falls within the range of other service awards for class representatives. *Bellinghausen*, 306 F.R.D. at 267 ("Incentive awards typically range from $2,000 to $10,000.").  Here, the Class Representatives stepped into their role following the passing of the original named plaintiff, have dedicated at least four hours to the litigation over the past twelve months, placed themselves in the public eye and committed to "provide whatever time and responsibility is needed to successfully litigate the claims on behalf of the class."  (Mot. Final Approval at 17.)

Based on the effort and risk undertaken by the Class Representatives in reaching the Agreement and the presumptively reasonable amount of this award, the Court finds that the requested service awards are reasonable and awards Christine McEvoy and Leng Sam $2,500, each, for their roles as Class Representatives.

## CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED:

1.  This Order incorporates by reference the definitions in the operative Settlement as though fully set forth herein, and all terms defined therein shall have the same meaning as set forth in the Settlement (ECF No. 69-1).

2.  This Court has jurisdiction over the claims of the Class Members asserted in this proceeding, personal jurisdiction over Plaintiffs and Defendants and the Class Members as defined in the Settlement, and subject matter jurisdiction to approve the Settlement;

3.  Plaintiff's Motion for Final Approval of Settlement (ECF No. 69) is GRANTED;

4.  The Class and Collective as defined in the Settlement (*see* ECF No. 69-1) are CERTIFIED for settlement purposes;

17

5. The Court finds that the Notice provided to the Class Members was reasonable, was the best notice practicable under the circumstances, and was valid, due, and sufficient notice to Class Members in full compliance with the requirements of applicable law;

6. The Court finds the Settlement in the Gross Settlement Amount of $300,000 is fair, reasonable, and adequate and the result of arm's length informed negotiations; thus the terms set forth in the Settlement are APPROVED. The Parties are hereby ORDERED to implement and comply with the terms of the Settlement;

7. The Court finds that the releases in the Settlement are appropriate. All Participating Rule 23 Class and opt-in FLSA Collective Members and Plaintiffs are bound by the releases as set forth in the Settlement. Further, all PAGA Class Members will release Defendant and the Released Parties from all PAGA claims for civil penalties as set forth in the Settlement;

8. The Court appoints Plaintiffs Christine McEvoy and Leng Sam as the Class Representatives for settlement purposes only, the Class Representatives are each awarded $2,500 pursuant to the terms of the Settlement and for their services as Class Representatives;

9. The Court appoints Harold Lichten and Matthew W. Thompson of Lichten & Liss-Riordan, P.C.; Adam Rose of Law Office of Robert Starr; and Jeff Vollmer of Goodwin & Goodwin, LLP, as Class Counsel for settlement purposes only.

10. The Court GRANTS Plaintiffs' Motion for Attorney's Fees and Costs (ECF No. 66). Class Counsel is awarded attorney's fees in the amount of $75,000 and costs in the amount of $10,645.

11. Phoenix Class Action Administration Solutions is awarded $5,000 for its services as the Settlement Administrator and shall carry out its remaining obligations under the Settlement;

12. The Court approves $10,000 of the Gross Settlement Amount to resolve PAGA claims with 75% of that portion ($7,500) to be paid to the LWDA as their share of the settlement for the civil penalties alleged and 25% ($2,500) to be distributed to the PAGA Class Members as their statutory share of the PAGA penalties.  Pursuant to Labor Code section 2699(s)(3), Plaintiffs shall submit a copy of this judgment to the LWDA within ten calendar days of its execution and entry by the Court;

13. Within seven business days after final disbursement of all amounts from the Gross Settlement Fund, the Settlement Administrator will serve on the Parties and file with the Court a declaration providing a final report on the disbursements of all funds;

14. By means of this Final Approval Order, this Court hereby enters final judgment as to Defendants in this action, binding each Participating Class Member and operating as a full release and discharge of Settled Claims;

15. The Court retains jurisdiction to consider all further issues arising out of or in connection with the Settlement;

////

////

////

////

////

////

////

////

19

16. Notice of entry of this Order and the ensuring final judgment shall be given to Class Counsel on behalf of its Plaintiffs and all Participating Class Members.  It shall not be necessary to send notice of entry of this Order or the ensuing final judgment to Class Members.

IT IS SO ORDERED.

Dated:   **February 6, 2026**

*Daniel J. Calabretta*

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC6 – SARTE22cv01678.fas_v3

20